525 A.2d 744

**COMMONWEALTH of Pennsylvania**

v.

**Thomas HASHEM, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 23, 1986.

Filed May 4, 1987.

112

114

116

Robert T. Gownley, Jr., Scranton, for appellant.

Ernest D. Preate, Jr., District Attorney, Scranton, for Commonwealth, appellee.

Before WIEAND, OLSZEWSKI and CERCONE, JJ.

OLSZEWSKI, Judge:

Appellant, Thomas Hashem, was arrested and charged with hindering apprehension or prosecution, pursuant to 18

Pa.C.S.A. Sec. 5105,[1] and criminal conspiracy to hinder apprehension or prosecution, pursuant to 18 Pa.C.S.A. Sec. 903.[2] Appellant was convicted of both charges in a jury trial before the Honorable James M. Munley of the Court of Common Pleas of Lackawanna County. Appellant was subsequently sentenced to serve one to three years in prison on each charge, the sentences to be served concurrently. Appellant appeals from his judgment of sentence.

Although appellant raises fifteen points of error, the District Attorney of Lackawanna County did not take sufficient interest to file a brief.[3] We find that the comprehensive opinion of the Honorable James M. Munley adequately disposes of the following eleven issues: (1) whether the trial court erred in allowing Ernest Preate, Jr., the District Attorney of Lackawanna County, to give his opinion on the

---

1. 18 Pa.C.S.A. Sec. 5105 provides, in pertinent part:
 § 5105. Hindering apprehension or prosecution
 (a) Offense defined.—A person commits an offense if, with intent to hinder the apprehension, prosecution, conviction or punishment of another for crime, he:
 (1) harbors or conceals the other;
 (2) provides or aids in providing a weapon, transportation, disguise or other means of avoiding apprehension or effecting escape;
 (3) conceals or destroys evidence of the crime, or tampers with a witness, informant, document or other source of information, regardless of its admissibility in evidence;
 (4) warns the other of impending discovery or apprehension, except that this paragraph does not apply to a warning given in connection with an effort to bring another into compliance with law; or
 (5) volunteers false information to a law enforcement officer.

2. 18 Pa.C.S.A. Sec. 903 provides in pertinent part:
 Criminal conspiracy
 (a) Definition of conspiracy.—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
 (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
 (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

3. We are shocked that the Commonwealth did not file a brief where important issues of law are presented.

ultimate issue in this case; (2) whether the trial court erred in refusing to grant appellant's motion for a change of venue; (3) whether the trial court erred in allowing Detective Harry Rescigno, Officer Thomas Tell, and Michelle Kulick to give their opinions concerning voice identification of appellant; (4) whether the trial court erred in admitting Commonwealth exhibits one and two, the actual tapes of three wiretapped communications since the Commonwealth did not establish relevancy; (5) whether the trial court erred in denying appellant's motion to disqualify the Lackawanna County District Attorney's office from prosecuting this case; (6) whether the trial court erred in denying appellant's motion that District Attorney Ernest Preate, Jr.'s testimony should not be admitted since it was cumulative and in most cases, irrelevant; (7) whether the trial court erred in allowing the hearsay testimony of District Attorney Preate; (8) whether the argumentative manner of District Attorney Preate while testifying was prosecutorial misconduct; (9) whether the trial court erred in refusing to dismiss the charges under 18 Pa.C.S.A. Sec. 312, the deminimis infractions section; (10) whether the trial court erred in denying appellant's request for charges on the issues of identity and deminimis infractions; and (11) whether the Honorable James M. Munley erred in failing to disqualify himself as the trial judge. We therefore affirm the trial court's opinion regarding these eleven issues. (See Appendix.)

We, consequently, will discuss only the following four issues: (1) whether 18 Pa.C.S.A. Sec. 5718 of the Wiretapping and Electronic Surveillance Control Act is unconstitutional; (2) whether law enforcement officials complied with the requirements of 18 Pa.C.S.A. Sec. 5718; (3) whether the trial judge erred in allowing the jury to read Commonwealth exhibits three, four, and five, which are transcripts of three wiretapped communications offered into evidence at the trial; (4) whether the trial judge erred in refusing to strike for cause prospective jurors six and ten, thereby forcing appellant's counsel to use peremptory challenges on

the two prospective jurors. For the reasons stated below, we affirm the trial court's judgment of sentence.

During 1982, the District Attorney of Lackawanna County, the Pennsylvania State Police, the Pennsylvania Attorney General, and the Scranton Police Department were all engaged in a coordinated investigation of illegal drug trafficking in Lackawanna County. Pursuant to this investigation, the District Attorney of Lackawanna County filed three applications with the Hon. Vincent A. Cirillo of the Superior Court for orders of authorization to intercept telephone conversations of certain named individuals, as well as other unnamed individuals. Appellant's name was not among those specifically listed in the applications. The applications stated that the telephone communications to be intercepted would pertain to offenses involving distribution and possession of controlled substances and conspiracy to commit such offenses, in violation of Pennsylvania's Controlled Substances Act. The three applications were approved by Judge Cirillo and docketed in the Superior Court as 45-1, 45-2, and 45-3.

After approval of the applications, law enforcement officials began electronic surveillance of the telephones in the residences of the individuals specifically identified in the applications. The electronic surveillance continued for twenty-one days, from December 1, 1982, to December 21, 1982. During this period, hundreds of conversations relating to illegal drug sales and trafficking were intercepted and recorded.

On December 1, 1982, appellant's voice or name was intercepted during three different conversations, though his discussions did not pertain to the trafficking of illegal drugs per se. Rather, he warned Michelle Kulick [4] that the telephone was being electronically monitored by law enforcement officials, and he told her to warn several other individuals of this situation. Ms. Kulick's voice was later inter-

---

4. Telephones in the residences of Michelle Kulick, Rose Trubia, Joseph Hashem, Sr. and Joseph Hashem, Jr. were electronically monitored by law enforcement officials during the December 1982 wiretap operation.

cepted during another conversation in which she told the other person that appellant had warned her about the telephone being wiretapped. Appellant was consequently arrested on December 19, 1983, and charged with hindering apprehension or prosecution, 18 Pa.C.S.A. Sec. 5105, and criminal conspiracy to hinder apprehension or prosecution, 18 Pa.C.S.A. Sec. 903. On May 8 and 9, 1985, appellant was tried before a jury in the Court of Common Pleas of Lackawanna County, and was found guilty of both charges. After denial of his post-verdict motions, Appellant filed this appeal.

Appellant's first two issues concern the constitutionality and interpretation of 18 Pa.C.S.A. Sec. 5718 of the Wiretapping and Electronic Surveillance Control Act. 18 Pa.C.S.A. Sec. 5718 provides:

**Interception of communications relating to other offenses.**

When an investigative or law enforcement officer, while engaged in court authorized interceptions of wire or oral communications in the manner authorized herein, intercepts wire or oral communications relating to offenses other than those specified in the order of authorization, the contents thereof, and evidence derived therefrom, may be disclosed or used as provided in Section 5717(a) (relating to disclosure or use of contents of wire or oral communications or derivative evidence). Such contents and evidence may be disclosed in testimony under oath or affirmation in any criminal proceeding in any court of this Commonwealth or of another state or of the United States or before any state or Federal grand jury when in advance of such disclosure and on application to a court, the court finds that the contents were listed in the final report, pursuant to section 5712(e) relating to issuance or order and effect), and were otherwise intercepted in accordance with the provisions of this chapter. Such application shall be made as soon as practicable.

This section is applicable only if, during the course of a judicially authorized and properly conducted electronic surveillance operation, law enforcement officers intercept wire or oral communications concerning crimes not mentioned in the original wiretap application. The original application must specify the criminal offenses that will be the focus of the wiretap operation. *See* 18 Pa.C.S.A. Sec. 5709. When conversations concerning crimes not mentioned in the original wiretap application are intercepted, the recordings may be offered into evidence at trial or other adversary proceedings only if the law enforcement officials intercepting the conversations properly comply with the statutory requirements of 18 Pa.C.S.A. Sec. 5718.

■ 18 Pa.C.S.A. Sec. 5718 enunciates four requirements. First, an application must be made to a judge of the Superior Court to authorize evidentiary use of the recordings pertaining to crimes not mentioned in the original wiretap authorization. Second, the contents of the recordings must be listed in the final report, pursuant to 18 Pa.C.S.A. Sec. 5712(e), and filed with the judge of the Superior Court who originally approved the wiretap order. Third, the recorded conversations must be intercepted in accordance with the other provisions of the Wiretapping and Electronic Surveillance Control Act. Last, the application filed with the judge of the Superior Court must be made as soon as practicable.

Appellant's first contention regarding 18 Pa.C.S.A. Sec. 5718 is that the statutory section is unconstitutional since it is violative of the Due Process Clause of the Fourteenth Amendment of the United States Constitution. In essence, appellant asserts that the "as soon as practicable" language of the statute does not provide an aggrieved individual with due process of law since the language is too vague to give a potential defendant fair notice of the time period in which law enforcement officials may seek to utilize the recordings as evidence of a criminal violation.

Before considering the merits of appellant's contention, however, we must first address two distinct questions con-

cerning whether this issue is properly before this Court: (1) whether appellant properly preserved this issue for consideration on appeal, and (2) whether appellant violated Pa.R.. A.P. 521 by failing to notify the Pennsylvania Attorney General regarding his intention to challenge the constitutionality of 18 Pa.C.S.A. Sec. 5718. For the reasons stated below, we find that appellant's constitutional issue is properly before this Court, and we will address the merits of appellant's contention.

In determining whether appellant properly preserved this issue for appeal, we must first trace the path that the issue has traveled in reaching this Court. Appellant first raised the constitutionality question in his omnibus pretrial motion (motion to suppress wire or oral communications). The motion stated, in pertinent part:

15. The above mentioned intercepted conversations were not lawfully done and violate "Wiretapping and Electronic Surveillance Control Act" 18 Pa.C.S.A. 5701 et seq. and are violative of the defendant's rights under the 4th and 14th Amendments to the U.S. and Pa. Constitution and are violative of the defendant's rights under the Pa. Rules of Criminal Procedure.

Appellant's motion to suppress was denied, but he again raised the constitutional issue in his post-verdict motion for new trail and motion in arrest of judgment. This motion provided in pertinent part:

27. Judge Walsh erred in denying Defendant's Pre-Trial Motion in that Wiretapping and Electronic Surveillance Controlled (sic) Act under which the District Attorney appilied (sic) for the court order to intercept phone communications is unconstitutional and is violative of the Pennsylvania State Constitution and the United States Constitution.

Further, appellant's brief supporting this motion noted:

Section 5178 (sic) of the Wire Tap Law provides that when oral communications relating to offenses other than those specified in the order of authorization are intercepted that a certain procedure must be followed. This

procedure does not afford an aggrieved person due process of law in that it is stated an application shall be made as soon as practicable. This is too vague.

In the Hashem case, the final report was filed in May of 1983 and the request to use said communications was made to Superior Court in January of 1985. This section of the Act as applied to the Defendant (Appellant) violates due process of law guaranteed to him under the 14th Amendment of the Pennsylvania and United States Constitution.

Defendant's (appellant) brief in support of the motion for new trial and motion in arrest of judgment at p. 21. Neither Judge Walsh's opinion supporting the order denying appellant's motion to suppress nor Judge Munley's opinion supporting the order denying appellant's post-verdict motions addresses the merits of appellant's constitutional challenge. The latter trial court opinion mentioned this issue only briefly:

Defendant's (appellant) allegations in paragraphs 25 and 27 claim error by Judge Walsh in denying Defendant's Omnibus Pre-Trial Motion. Again, Defendant has not introduced new evidence that would require us to override the decision of a judge of this court. We concur with the April 10, 1985 decision of Judge Walsh to deny Defendant's Motion to Suppress intercepted wire and oral communications, and will not disturb his findings in the absence of new evidence.

Trial court opinion of Judge Munley at pp. 766–767. In his appeal before this Court, appellant raises exactly the same issue that he raised in his post-verdict motions, and he phrased both issues, and his supporting arguments, exactly the same.

██ A comparison of appellant's constitutional contentions as raised in his suppression motion and before this Court reveals that the two are different. In both instances, appellant maintains that the intercepted communications violate his constitutional rights, specifically his rights under the Fourteenth Amendment. But three significant differ-

ences exist. First, appellant in his suppression motion stated without any factual specificity that the intercepted communications violate his rights under the Fourth Amendment and under the Pennsylvania Rules of Criminal Procedure. In his brief before this Court, appellant, however, does not mention either the Fourth Amendment or the Pennsylvania Rules of Criminal Procedure, thereby waiving any issues concerning them. Second, appellant's suppression motion merely stated that the intercepted communications violated his constitutional rights, but appellant's appellate brief specifically challenges the constitutionality of the "as soon as practicable" provision of 18 Pa.C.S.A. Sec. 5718 of the Wiretapping and Electronic Surveillance Control Act. Third, appellant's suppression motion did not provide any specific facts, circumstances or grounds supporting his constitutional claims, but appellant's appellate brief specifies that his due process rights were violated because of the nineteen-month delay between the filing of the final report and the application to use the intercepted communications.

■ The constitutional issues raised by appellant in his suppression motion and in his appeal are different, and as such, are potentially troublesome since a claim of error not properly preserved for appellate review will not, as a rule, be considered by this Court on appeal. *See Commonwealth v. Albert,* 335 Pa.Super. 424, 426, 484 A.2d 775, 776 (1984). Two reasons, however, persuade us to decide the merits of appellant's contention that 18 Pa.C.S.A. Sec. 5718 violates the due process clause of the Fourteenth Amendment. First, in his suppression motion did contend that the intercepted communications violated his rights under the Fourteenth Amendment, and we believe that the motion has sufficient grounds supporting the claim, pursuant to Pa.R. Crim.P. 323(d),[5] to preserve the issue for appellate review in this case, especially considering the underdeveloped state of

5. Pa.R.Crim.P. 323(d), which concerns motions to suppress evidence, provides:
 (d) The motions shall state specifically and with particularity the evidence sought to be suppressed, the grounds of suppression, and the facts and events in support thereof.

Pennsylvania law concerning evidentiary use of intercepted communications relating to crimes not mentioned in the original wiretap application. *See Commonwealth v. Beauford*, 327 Pa.Super. 253, 260 n. 6, 475 A.2d 783, 786–787 n. 6 (1985) (suppression motions stating that "the information used to obtain dialed number orders (DNR) is insufficient and the orders themselves were legally and constitutionally unjustified," citing Art. I, Sec. 8 of Pennsylvania Constitution, and the Fourth and Fourteenth Amendments of the Federal Constitution, were sufficiently particular, pursuant to Pa.R.Crim.P. 323(d), especially given the underdeveloped state of Pennsylvania law concerning DNR use).

■ Second, even if appellant's due process challenge to the criminal wiretap statute was not properly raised in the motion to suppress and, consequently, not properly preserved for appellate review, we can consider appellant's due process challenge as if it had been properly raised in the court below. In *Commonwealth v. Paul*, 177 Pa.Super. 289, 111 A.2d 374 (1955), the defendant asserted for the first time on appeal a due process challenge against a criminal statute making the operation or conduct of a lottery a misdemeanor. This Court stated:

His (defendant) present position is that "having been convicted under a statute which fails to meet the requirements of Due Process," he is entitled to have his conviction reversed. It is settled law that matters not raised in, or considered by, the court below cannot be invoked on appeal ... This rule applies even when, as here, the question raised is a constitutional one.

We could, of course, dispose of this appeal by invoking the rule above stated. We prefer, however, to consider the question raised by the defendant as if it had been properly raised in the court below.

*Id.*, 177 Pa.Superior Ct. at 291, 111 A.2d at 375 (citations omitted). *Accord Commonwealth v. Page*, 451 Pa. 331, 334 n. 4, 303 A.2d 215, 217 n. 4 (1973) ("While generally we will not consider issues, on direct appeal, which were not presented in post-trial motions, we have enumerated an

exception to the rule when, as here, the issue (constitutionality of criminal statutes proscribing abortion) is one of public policy"); *Haagen v. Patton*, 193 Pa.Super. 186, 191–192, 164 A.2d 33, 35 (1960) (as a general rule, the appellate court will refuse to consider matters which were not raised in the court below, but this rule does not apply where questions of jurisdiction or public policy are involved).

■ We next address whether appellant improperly failed to notify the Pennsylvania Attorney General, pursuant to Pa.R.A.P. 521(a),[6] concerning his intention to challenge the constitutionality of 18 Pa.C.S.A. Sec. 5718. Our review of the record reveals that no such notice was given, but we believe that appellant was not required to notify the Attorney General in this case. A plain reading of the language of Pa.R.A.P. 521(a) reveals a party has the duty to notify the Attorney General of a constitutional challenge to a statute only "in any matter in an appellate court to which the Commonwealth or any officer thereof, acting in his official capacity, is not a party." In addition, *Commonwealth v. Hassine*, 340 Pa.Super. 318, 490 A.2d 438 (1985), interpreting Pa.R.A.P. 521(a), stated:

> Appellant's failure to notify the Attorney General pursuant to Pa.R.A.P. 521(a) would normally constitute a waiver of his constitutional challenge. However, this court, in the interest of judicial economy and because the plain language of Rule 521(a) exempts the challenging party from his obligation where the Commonwealth is a party, has adopted the policy of addressing the merits of these constitutional challenges.

6. Pa.R.A.P. 521, Notice to Attorney General of Challenge to Constitutionality of statute, provides in pertinent part:

(a) **Notice.** It shall be the duty of a party who draws in question the constitutionality of any statute in any matter in an appellate court to which the Commonwealth or any officer thereof, acting in his official capacity, is not a party, upon the filing of the record, or as soon thereafter as the question is raised in the appellate court, to give immediate notice in writing to the Attorney General of Pennsylvania of the existence of the question; together with a copy of the pleadings or other portion of the record raising the issue, and to file proof of service of such notice.

*Id.*, 340 Pa.Superior Ct. at 350 n. 16, 490 A.2d at 455 n. 16 (citations omitted). In *Hassine,* as in this case, the Commonwealth was represented by an assistant district attorney. We, therefore, will address the merits of appellant's constitutional challenge.

In *Fabio v. Civil Service Commission of the City of Philadelphia,* 489 Pa. 309, 414 A.2d 82 (1980), the Supreme Court of Pennsylvania concisely summarized the United States Supreme Court's development of the void for vagueness doctrine under the Due Process Clause of the Fourteenth Amendment. In *Fabio,* the Supreme Court of Pennsylvania stated:

A law is void on its face if it is so vague that persons "of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). *See also, note,* "The void for vagueness doctrine in the Supreme Court." 109 U.Pa.L.Rev. 67 (1960). The void for vagueness doctrine incorporates the due process notions of fair notice or warning. *Grayned v. Rockford,* 408 U.S. 104, 108–109 n. 4, 92 S.Ct. 2294, 2298–2299 n. 4, 33 L.Ed.2d 222 (1972); *Papachristou v. Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed. 110 (1972); *Commonwealth v. Skufea,* 457 Pa. 124, 131, 321 A.2d 889 (1974). Also the doctrine mandates that lawmakers set reasonably clear guidelines for law enforcement officers and triers of fact in order to prevent "arbitrary and discriminatory enforcement." *Smith v. Goguen,* 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 [1974]; *see also, Commonwealth v. Skufea,* 457 Pa. [124] at 131, 321 A.2d [889] at 893 [1974]. Therefore, in reviewing a void for vagueness challenge, we must consider both the essential fairness of the law and the impracticality of drafting legislation with greater specificity. (*Arnett v. Kennedy,* 416 U.S. 134, 161, 94 S.Ct. 1633, 1647, 40 L.Ed.2d 15 (1974); *Meehan v. Macy,* 392 F.2d 822, 835 (D.C.Cir.1968)). L.Tribe. American Constitutional Law 719 (1978).

*Fabio,* 489 Pa. at 314–315, 414 A.2d at 84–85 (footnote omitted). *See also, Commonwealth v. Potts,* 314 Pa.Super. 256, 268, 460 A.2d 1127, 1133 (1983) ("The void for vagueness doctrine, as extensively developed by the United States Supreme Court, is a due process doctrine incorporating notions of fair notice and warning.").

In the present case, we hold that the "as soon as practicable" language of 18 Pa.C.S.A. Sec. 5718 is not so vague as to be violative of the Due Process Clause of the Fourteenth Amendment. Appellant correctly maintains that the statute does not provide a definite, ascertainable time limit within which law enforcement officials must apply to a judge of the Superior Court for authorization to use as evidence recordings pertaining to crimes not mentioned in the original wiretap authorization. But several reasons persuade us that the statute is not constitutionally infirm because it is too vague, leading to arbitrary and discriminatory enforcement of the statute.

First, legislative enactments have a strong presumption of constitutionality and a statute will not "be declared unconstitutional unless it clearly, palpably and plainly violates the Constitution." *Patton v. Republic Steel Corp.,* 342 Pa.Super. 101, 115, 492 A.2d 411, 418 (1985). Further, the party challenging a statute's constitutionality bears the heavy burden of establishing that the statute clearly, palpably and plainly violates the Constitution. *See Commonwealth v. Grady,* 337 Pa.Super. 174, 178, 486 A.2d 962, 965 (1984). Second, the statute's language does not prohibit an act whose description is so vaguely worded that an ordinary person could not understand it. Rather, the statute mandates the procedure to be followed by law enforcement officials in qualifying certain recordings for evidentiary use in criminal proceedings. Third, the statute's "such application shall be made as soon as practicable" language effectively furthers the purpose of the statute by allowing law enforcement officials sufficient time and flexibility to investigate and determine whether a particular wiretapped conversation pertained to criminal activity and whether the

recording should be utilized as evidence of the crime. The length or breadth of a criminal investigation cannot be ascertained or predicted with mathematical certainty, and setting arbitrary time limits in the statute would only hinder the progress of criminal investigations. By setting an "as soon as practicable" standard, the statute balances both considerations of fairness and practicality. A judge of the Superior Court must decide if an application meets the statutory requirements, including whether the application was made as soon as practicable. The "as soon as practicable" requirement, consequently, sets a reasonable limit on the amount of time in which law enforcement officials may seek to use recorded conversations as evidence of criminal activity by a person; it does not, however, arbitrarily limit the amount of time law enforcement agencies have to complete their investigations and determine whether the recorded conversations pertain to some type of criminal activity. Fourth, the statute does not allow law enforcement officials free rein to record conversations of individuals and later use the recordings as evidence of criminal activity by the individuals. To comply with this statute, the original wiretap request (noting the crimes to be intercepted) has to be approved by a judge of the Superior Court pursuant to the provisions of the Wiretapping and Electronic Surveillance Control Act, and the operation of the wiretap must be in compliance with the statutory requirements of the act. Further, use of any recorded conversation as evidence of crimes not mentioned in the original application must be approved by a judge subsequent to the recording of the conversation. This practice checks any arbitrary or discriminatory actions by law enforcement officials since the judge can assess the circumstances of each case to determine if the requirements of 18 Pa.C.S.A. Sec. 5718 have been met. We therefore reject appellant's contention as meritless.

Appellant's next contention regarding 18 Pa.C.S.A. Sec. 5718 is that the requirements of the section were not complied with in this case since neither his name, nor his conversations, were mentioned in the original final report

on the wiretap operation, and law enforcement officials waited twenty-six months to apply for use of the recordings as evidence of appellant's alleged crimes, which were not mentioned in the original wiretap authorization. Appellant was arrested on December 19, 1983, and charged with hindering, and conspiracy to hinder, apprehension or prosecution because of what he said during several telephone conversations that were legally recorded on December 17, 1982. The wiretap operation, as previously noted, was authorized to record conversations regarding illegal drug sales and trafficking in violation of the Controlled Substances Act. The final reports on this wiretap operation were filed with Judge Cirillo on May 6, 1983, but appellant's name, the charges later brought against him, and the contents of his conversations were not listed in this final report.

After his arrest, appellant in March 1984 filed a motion to suppress the evidence against him, contending its use would violate 18 Pa.C.S.A. Sec. 5718. In January 1985, the District Attorney of Lackawanna County filed a supplemental file report on the December 1982 wiretap operation, listing for the first time appellant's name, the charges against him, and the contents of his conversations. In addition, the district attorney in January 1985 made an application to Judge Cirillo pursuant to 18 Pa.C.S.A. Sec. 5718 to make evidentiary use of appellant's recorded conversations from the wiretaps docketed at 45–1, 45–2, and 45–3. Judge Cirillo entered an order on January 3, 1985, approving the district attorney's application to utilize appellant's recorded conversations. On April 10, 1985, Judge Walsh of the Court of Common Pleas of Lackawanna County entered an order denying appellant's motion to suppress the evidence; and on May 8 and 9, 1985, appellant was tried and convicted of the charges against him in a jury trial presided over by Judge Munley of the Court of Common Pleas of Lackawanna County.

In Pennsylvania, law enforcement officials seeking to use recorded conversations as evidence of crimes not listed in

the original wiretap application must comply with the four requirements of 18 Pa.C.S.A. Sec. 5718. As previously discussed *supra*, the four requirements of the statute are: (1) the contents of the conversations must be listed in the final report pursuant to 18 Pa.C.S.A. Sec. 5712(e); (2) the conversations must be intercepted in accordance with the other provisions of the wiretap act; (3) an application to use the recordings must be made to a judge of the Superior Court; and (4) the application must be made as soon as practicable. Requirements (2) and (3) are not at issue in this case. No question has been raised about the manner in which the wiretap operation was conducted, and an application to use the recordings was made to Judge Cirillo. Requirements (1) and (4), however, concerning the timing of both the final report and the application, are at issue in this case.

 The first requirement concerns the filing of a final report at the conclusion of a wiretap operation. 18 Pa.C.S.A. Sec. 5718 states that a final report in compliance with 18 Pa.C.S.A. 5712(e) and a list of the contents of the recordings must be filed with the judge supervising the wiretap operation. 18 Pa.C.S.A. Sec. 5712(e), entitled "Final Report," states: "Whenever a surveillance is authorized pursuant to this section, a complete list of names of participants and evidence of offenses discovered, including those not stated in the application for order, shall be filed with the court at the time the authorized surveillance is terminated." In essence, the two statute sections, taken together, seem to indicate that upon termination of a wiretap operation, a final report listing both participants and evidence of offenses discovered, including those crimes not mentioned in the original application, must be filed with the judge supervising the wiretap operation. But *Commonwealth v. Doty*, 345 Pa.Super. 374, 498 A.2d 870 (1985), *cert. denied*, —— U.S. ——, 107 S.Ct. 185, 93 L.Ed.2d 119 (1986), which is the only case previously interpreting the final report requirement of the Wiretapping and Electronic Surveillance Control Act, more liberally construed the timing aspect of the

final report. Noting that neither the federal wiretap statute nor the wiretap law of any other state has a final report requirement, the Court stated:

We conclude that it would be an unreasonable interpretation of 18 Pa.C.S.A. Sec. 5712(e) and serve no essential purpose to require suppression of all evidence obtained by an intercept whenever the final report is not filed simultaneously with the termination of surveillance. The final report must contain "a complete list of names of participants and evidences of offenses discovered." (18 Pa.C.S.A. Sec. 5712(e)). For the preparation of such a report a reasonable amount of time must be allowed.

*Id.*, 345 Pa.Superior Ct. at 405, 498 A.2d at 885. In addition, *Doty* also noted that the determination of whether a delay in filing a final report is unreasonable hinges on the prejudice to the defendant caused by the delay. *Id.* Furthermore, *Doty* seemed to indicate that prejudice was not present if a defendant receives notice more than ten days before an adversary proceeding where the Commonwealth intends to introduce recorded conversations as evidence of the crimes charged. *Accord* 18 Pa.C.S.A. Sec. 5720. We explicitly conclude that a delay in filing a final report is unreasonable only if the defendant is prejudiced by the delay. Further, a significant factor in determining if a defendant is prejudiced is the point in time before an adversary proceeding when he receives notice regarding the prosecution's intention to utilize the recorded conversations as evidence to substantiate criminal charges in the adversary proceeding.

In the present case, appellant's trial was on May 8 and 9, 1985. In January 1985, the Lackawanna County District Attorney's office filed a supplemental final report listing appellant's name and the contents of his recorded conversations from the December 1982 wiretap operation. Even though the supplemental final report was filed twenty-six months after the conversations were originally recorded in December 1982, the report was still filed approximately four months prior to appellant's trial. Consequent-

ly, appellant, had sufficient notice that the recorded conversations would be introduced as evidence of the criminal charges against him. Therefore, he suffered no prejudice from the twenty-six-month delay in filing the final report since he was aware four months in advance of trial that the tapes containing his conversations would be offered into evidence.

The other requirement of 18 Pa.C.S.A. Sec. 5718 at issue in this case is the fourth requirement, which states that the application to a judge to utilize recorded conversations concerning crimes not listed in the original application must be made "as soon as practicable." The phrase as found in 18 Pa.C.S.A. Sec. 5718 has previously not been interpreted by a Pennsylvania appellate court.

The same phrase, however, is found in the federal statute, 18 U.S.C. Sec. 2517(5), that is analogous to 18 Pa.C.S.A. Sec. 5718. 18 U.S.C. Sec. 2517(5) provides:

> When an investigative or law enforcement officer, while engaged in intercepting wire or oral communications in the manner authorized herein, intercepts wire or oral communications relating to offenses other than those specified in the order or authorization or approval, the contents thereof, and evidence derived therefrom, may be disclosed or used as provided in subsections (1) and (2) of the section. Such contents and any evidence derived therefrom may be used under subsection (3) of this section when authorized or approved by a judge of competent jurisdiction where such judge finds on subsequent application that the contents were otherwise intercepted in accordance with the provisions of this chapter. Such application shall be made as soon as practicable.

The Pennsylvania and federal statutes, concerning qualification of recorded conversations for use as evidence of criminal offenses not mentioned in the original wiretap authorization, are substantially similar. The only significant difference is that the federal statute, unlike the Pennsylvania statute, does not require the filing of a final report listing the identity of the parties and the contents of the recorded

conversations. But both statutes require law enforcement officials to make an application as soon as practicable to an appropriate judge to qualify for evidentiary use recorded conversations concerning offenses not mentioned in the original wiretap order.

Though Pennsylvania courts have not previously interpreted the "as soon as practicable" language of 18 Pa.C. S.A. Sec. 5718, several federal decisions have construed the phrase "as soon as practicable" as found in 18 U.S.C. Sec. 2517(5). In *United States v. Arnold*, 773 F.2d 823 (7th Cir.1985), the Seventh Circuit discussed the philosophy and nature of 18 U.S.C. Sec. 2517(5). The Court stated:

> The framers of Title III presumably intended by this requirement to prevent evasion of the several restrictions upon original applications (e.g., showing of probable cause, enumerated serious crime, ineffectiveness of other investigatory techniques as to that offense). Otherwise, the applicant could easily name one crime while in fact he may have anticipated intercepting evidence of a different crime for which the prerequisites could not be satisfied. Such "subterfuge searches," in addition to their dissonance with Title III, would run afoul of the Fourth Amendment.

*Id.* at 829 (quoting *United States v. Marion*, 535 F.2d 697, 700–701 (2d Cir.1976). In addition, *Arnold* also stated that the factors that a court must consider in addressing a post-interception application are the same factors the court must consider in addressing the original application. The factors are "a showing that the original application met the requirements of probable cause, enumerated serious crime and ineffectiveness of other investigatory techniques as to that offense and further that the application was made in good faith." *Arnold*, 773 F.2d at 829.

Further, *Arnold*, specifically addressing the "as soon as practicable" language of the federal statute, stated:

> The mere passage of time between the time of interception and the time of testimonial use does not allow the Government to avoid or evade these factors (probable

cause, enumerated crime, ineffectiveness of other investigatory techniques and good faith). Because we fail to understand how the passage of time between the time of interception and the time of testimonial use allows the Government to alter these factors, we hold that requiring the Government to submit a judicial application immediately upon intercepting new crimes evidence is unnecessary to satisfy the purpose of Sec. 2517(5), i.e., to safeguard a defendant from subterfuge searches and we reject the defendant's novel and ridiculous attempt to read into the statute a statute of limitations on testimonial use.

*Id.* at 829. Consequently, even though in *Arnold* a thirty-one-month delay ensued between the time of the wiretap operation and the application to utilize the recordings, the Seventh Circuit held "that Sec. 2517(5) was not violated because the original surveillance order was lawfully obtained, in good faith and not as a subterfuge, and a post-interception application under Sec. 2517(5) was made 'as soon as practicable' before testimonial use was made of the intercepted conversations." *Id.* at 830–831.

In addition, our review of several other federal decisions in which the defendants moved to suppress the evidentiary use of recorded conversations on the ground that the application for testimonial use was not made "as soon as practicable," reveals that federal courts allow the use of the recorded conversations as evidence so long as the application is made as soon as practicable *prior* to the adversary proceeding in which the recorded conversations will be introduced. In *United States v. Bell,* 637 F.Supp. 452 (D.Kan.1986), the defendants asserted that the phrase "such application shall be made as soon as practicable" requires the application for subsequent use to be made as soon as practicable after the interception. In rejecting this contention, the federal district court stated:

The requirements of Sec. 2517(5), including the "as soon as practicable" requirement, must be read in a common sense fashion. The interpretation of the statute suggest-

ed by the defendants would be overly burdensome on law enforcement efforts. Officials intercepting communications would be required to make technical, and often subtle, legal judgments about the conversations intercepted. The official would be required to decide immediately whether the communication concerned a crime for which interception had not been specifically authorized and whether the communication might be necessary evidence for future prosecution. The court is persuaded that Congress did not intend such a request.

*Id.* at 455 (cite omitted). *See also United States v. DePalma,* 461 F.Supp. 800, 826 (S.D.N.Y.1978) (when a disclosure order was obtained more than two and a half months before the trial was to begin, defendants failed to show that they were prejudiced by the government's delay in securing judicial approval to use the information since the government did secure approval before using the information in any adversary proceeding); *United States v. Aloi,* 449 F.Supp. 698, 716 (E.D.N.Y.1977) (defendants can show no prejudice since prior to the use of the interceptions, a judge of competent jurisdiction had favorably passed on the good faith and legality of the initial orders).

 In essence, the federal courts have construed the "such application shall be made as soon as practicable" language of 18 U.S.C. Sec. 2517(5) to mean the application must be made as soon as practicable before testimonial use of the recordings at defendant's trial, not as soon as possible after the conversation is recorded. The potential prejudice to the defendant's ability to adequately defend himself and protect his rights if the recorded conversations are used as evidence is the rationale underlying this construction. The timing of the application after the original recording is unimportant as long as a defendant has adequate notice that the tapes will be used as evidence of the criminal charges against him, and the conversations were originally recorded in accordance with the provisions of the federal wiretap act. If a defendant is not provided with sufficient notice regarding the government's intention to introduce

the conversations as evidence, or the wiretap operation was not conducted in accordance with the requirements of the wiretap act, a defendant can show prejudice and the application must be refused.

In construing [7] the "as soon as practicable" provision of 18 Pa.C.S.A. Sec. 5718, we adopt the analysis employed by federal courts in construing the meaning of the "as soon as practicable" language in 18 U.S.C. 2517(5). Two reasons support this position. First, under both the Pennsylvania act and the federal act, certain similar statutory requirements must be established before an appropriate judge will approve a wiretap request. In Pennsylvania, some of the factors to be considered are: whether probable cause exists to believe a certain criminal offense is about to be committed; whether conversations relating to the suspected offense may be obtained by electronic surveillance; and whether normal investigative procedures have failed, will probably not succeed, or are too dangerous. *See* 18 Pa.C.S.A. Sec. 5710. These requirements are very similar to the federal requirements for judicial approval of a wiretap request, which include probable cause to suspect a criminal offense, ineffectiveness of other investigatory means, and the good faith of the application. *See* 18 U.S.C. 2518; *Arnold*, 773 F.2d at 829. Consequently, the wiretap provisions of both Pennsylvania and the federal government provide an individual with protection against unrestrained, unregulated electronic eavesdropping by law enforcement officials. Under both statutory schemes, a post-interception application must establish that the wiretap operation complied with the provisions of the respective wiretap act.

Second, interpreting "as soon as practicable" to mean as soon as practicable before a defendant's trial or other adversary proceeding, appropriately balances law enforce-

---

7. In construing 18 Pa.C.S.A. Sec. 5718, we have adhered to the provisions of the Statutory Construction Act, 1 Pa.C.S.A. Sec. 1501, et seq. Our construction of the statute furthers the statute's purpose by clarifying the procedure law enforcement officials must follow in qualifying for evidentiary use recorded conversations dealing with crimes not mentioned in the original wiretap application.

ment concerns and a defendant's rights. Under this interpretation, law enforcement officials have sufficient time and flexibility to investigate potential criminal violations without an arbitrary time limit, and a defendant is ensured of getting adequate notice that his recorded conversations will be introduced at trial as evidence of the criminal charges against him. If an application is made at such time that a defendant is not given sufficient notice regarding the prosecutor's intention to make evidentiary use of the recorded conversations, his ability to defend himself is prejudiced, and the application is not made "as soon as practicable." Sufficient notice means that a defendant receives at least ten days prior to trial or other statutory proceeding a copy of the order authorizing evidentiary use of the tapes, the application requesting the order, and the final report listing the contents of the tapes. *See* 18 Pa.C.S.A. Sec. 5720.[8] An application under 18 Pa.C.S.A. Sec. 5718, consequently, must be made sufficiently far in advance of defendant's trial to allow two separate events to occur. First, the judge must be given adequate time to consider the application and decide whether to issue an order approving the application. Second, the defendant must receive a minimum ten days' notice about the evidentiary use of the recorded conversations at his trial.

8. 18 Pa.C.S.A. 5720 provides:
 **Service of copy of order and application before disclosure of intercepted communication in trial, hearing or proceeding**
 The contents of any wire or oral communication intercepted in accordance with the provisions of this chapter, or evidence derived therefrom, shall not be disclosed in any trial, hearing, or other adversary proceeding before any court of the Commonwealth unless not less than ten days before the trial, hearing or proceeding the parties to the action have been served with a copy of the order, the accompanying application and the final report under which the interception was authorized or, in the case of an interception under section 5704 (relating to exceptions to prohibition on interception and disclosure of communications), notice of the fact and nature of the interception. The service of inventory, order, application, and final report required by this section may be waived by the court only where it finds that the service is not feasible and that the parties will not be prejudiced by the failure to make the service. 1978, Oct. 4, P.L.831, No. 164, Sec. 2, effective in 60 days.

Appellant also contends that the trial judge erred in allowing the jury to read Commonwealth exhibits three, four, and five, which are transcripts of the three wiretapped communications used in the trial. Appellant asserts that the transcripts are highly prejudicial since they were prepared by members of the district attorney's office. We, however, find appellant's contention to be meritless.

In *Commonwealth v. Leveille*, 289 Pa.Super. 248, 433 A.2d 50 (1981), the Superior Court of Pennsylvania enunciated the standard to be applied in reviewing trial court decisions concerning use of sound recordings, and transcripts thereof, at trial. The Court stated:

Although we have found no Pennsylvania appellate decisions directly on point, we are guided by cases from other jurisdictions which have considered the issue presented. In *State v. Donato*, 414 A.2d 797 (R.I.1980), the Supreme Court of Rhode Island stated:

Most jurisdictions ruling on the admissibility of sound recordings of imperfect quality or partial inaudibility have held that a recording will be admissible unless the inaudible portions or omissions are so substantial as to render the recording as a whole untrustworthy. *United States v. Avila*, 443 F.2d 792, 795 (5th Cir.), *cert. denied*, 404 U.S. 944, 92 S.Ct. 295, 30 L.Ed.2d 258 (1971); *State v. Dye*, 60 N.J. 518, 531, 291 A.2d 825, 831, *cert. denied*, 409 U.S. 1090, 93 S.Ct. 699, 34 L.Ed.2d 675 (1972); *see Bentley v. State*, 397 P.2d 976, 979 (Alaska 1965); *State v. Salle*, 34 Wash.2d 183, 193, 208 P.2d 872, 878 (1949). Furthermore, these courts would leave the matter of the admissibility of such recordings to the sound discretion of the trial court. *See United States v. Avila*, 443 F.2d at 795 (5th Cir.), *cert. denied*, 404 U.S. 944, 92 S.Ct. 295, 30 L.Ed.2d 258 (1971).

414 A.2d at 805. *Accord, United States v. Lawson*, 347 F.Supp. 144, 147 (E.D.Pa.1972) (collecting cases). *See also Smith v. State*, 272 Ind. 328, 397 N.E.2d 959, 962–63 (1979) ("the focus is upon whether the recording taken as

a whole, or a crucial segment thereof, is of such poor quality that it is likely to lead to jury speculation as to its contents"). *People v. Sacchitella,* 31 App.Div.2d 180, 295 N.Y.S.2d 880 (1968) (same). *See generally* Annot., 57 A.L.R.3d 746, 752–54 (1974) (collecting cases).

*Id.,* 289 Pa.Superior Ct. at 252–253, 433 A.2d at 52.

■■■ In the present case, we are convinced that the trial judge did not abuse his discretion in admitting tape recordings of appellant's conversations, and allowing the jury to review transcripts of the tapes while the tapes were being played at trial. First, the trial court, after listening to the tapes *in camera,* "found that the recordings of the intercepted conversations were not too unintelligible to be admitted into evidence, and that the transcripts were accurate in all material respects." Trial court opinion of Judge Munley at p. 758. Second, appellant's attorney did not object to use of the transcripts at trial until the day of the trial even though the district attorney made the transcripts available to him well in advance of trial. Third, the transcripts of the recordings were prepared and used only to aid the jury's understanding during the playing of the taped conversations. The transcripts were neither offered into evidence nor made available to the jury during their deliberations. Judge Munley's trial court opinion accurately stated:

We also note that Defendant's argument that he "was prejudiced from said self serving evidence prepared by the District Attorney", . . . was thoroughly addressed in *United States v. Lawson,* 347 F.Supp. 144 ([E.D. Pa.]1972). In *Lawson,* the Court ordered the Government to prepare an accurate transcript of relevant taped conversations—*with the speakers identified in accordance with the Government's contention*—for jury use at trial. The transcripts were used solely as an aid to the jury's understanding of the taped conversations. As in *Lawson,* supra., the transcripts in this case were prepared in a similar format and were not admitted into evidence but were distributed to the jury immediately prior to the

playing of the tapes and were collected after their conclusion. The transcripts were not sent out with the jury during deliberations. We note that the Defendant was free at all times to point out any transcript discrepancies through cross-examination of Michele Kulick. And, in fact, the Defendant requested and was permitted to replay portions of the tapes during cross-examination.

Trial court opinion of Judge Munley at pp. 758–759.

█ Appellant's final contention is that the trial court erred by refusing to strike for cause prospective jurors six and ten, thereby making appellant's trial counsel use two peremptory challenges to strike the two prospective jurors. Prospective juror six, Kathleen M. Baranowski, said during voir dire that Lackawanna County District Attorney Ernest Preate, Jr., who was a Commonwealth witness in the case, had previously prosecuted the individual who had murdered her brother. But upon further questioning, she stated that the District Attorney's prosecution of the earlier trial would not "in any way" affect her decision in this case and that she could be fair and impartial to both sides. In addition, Ms. Baranowski knew District Attorney Preate only through his involvement in the trial of her brother's murderer, not through any personal or social relationship. *See* N.T., 5/8/85, pp. 11–18, 11–29. Prospective juror ten, Eleanor Rose Kisthart, stated during voir dire that she had read the beginning of a newspaper article [9] concerning a mistrial

---

9. Appellant also asserts that the trial court erred in refusing his motion for a change of venue because of prejudicial pre-trial publicity. Appellant contends several newspaper articles published prior to his trial contained inaccurate and sensational facts about his case. "The grant or refusal of a change of venue is ordinarily within the sound discretion of the trial judge, and widespread publicity does not absolutely necessitate a change of venue." *Commonwealth v. Geschwendt*, 271 Pa.Super. 102, 107, 412 A.2d 595, 598 (1979). We, however, conclude that the trial court did not abuse its discretion in denying appellant's motion for a change of venue, and we adopt Judge Munley's compehensive treatment of the issue in his opinion. *See* Trial court opinion of Judge Munley at pp. 761–762.

We note only two specific facts, both addressed in Judge Munley's opinion. First, of the thirty-two prospective jurors, only two indicated that they had read anything about the case. Second, both prospective jurors, upon questioning by the trial court, indicated that they could

in the case, though she did not read the details of the article. Upon further questioning by the court, she indicated that she could put the article out of her mind and that she could render a fair and impartial verdict. *See* N.T., 5/8/85, pp. 11–17, 11–18.

Voir dire examinations are intended to provide counsel with an opportunity to assess the qualifications of prospective jurors to serve. *See Commonwealth v. Drew*, 500 Pa. 585, 588, 459 A.2d 318, 320 (1983). In *Commonwealth v. Johnson*, 452 Pa. 130, 305 A.2d 5 (1973), our Supreme Court discussed the purpose behind voir dire examination. The Court stated:

> (T)he purpose of voir dire examination is to disclose qualifications or lack of qualifications of a juror and in particular to determine whether a juror has formed a fixed opinion as to the accused's guilt or innocence. The law recognizes that it would be unrealistic to expect jurors to be free from all prejudices, a failing common to all human beings. We can only attempt to have them put aside those prejudices in the performance of their duty, the determination of guilt or innocence. We therefore do not expect a tabula rasa but merely a mind sufficiently conscious of its sworn responsibility and willing to attempt to reach a decision solely on the facts presented, assiduously avoiding the influences of irrelevant factors.

*Id.*, 452 Pa. at 136, 305 A.2d at 8. Thus, the voir dire inquiry must be directed at determining whether the prospective jurors are "competent and capable of rendering a fair, impartial, and unbiased verdict." *Drew*, 500 Pa. at 588, 459 A.2d at 320.

A trial judge should excuse a prospective juror for cause in only two situations. "The first is where the prospective

---

put the articles out of their minds and render a fair and impartial verdict in this case. *See Commonwealth v. Hoss*, 469 Pa. 195, 200, 364 A.2d 1335, 1338 (1976) ("(T)he critical question where members of the panel have been exposed to pretrial media publicity, is whether or not they are capable of casting aside any impressions or opinions that may have formed and render a verdict based solely upon the evidence presented to them during the course of the trial.").

juror indicates by his answers that he will not be an impartial juror ... The second is where, irrespective of the answers given on voir dire, the court should presume the likelihood of prejudice on the part of the prospective juror because the juror has such a close relationship, be it familial, financial or situational, with one of the parties, counsel, victims, or witnesses." *Commonwealth v. Upchurch*, 355 Pa.Super. 425, 441, 513 A.2d 995, 1002 (1986). In *Commonwealth v. Colson*, 507 Pa. 440, 490 A.2d 811 (1985), our Supreme Court enunciated the test to be applied in determining whether a juror should be disqualified. The Court stated:

> The test for determining whether a prospective juror should be disqualified is whether he or she is willing and able to eliminate the influence of any scruples and render a verdict according to the evidence, and this is to be determined on the basis of answers to questions and demeanor ... The decision on whether to disqualify is within the sound discretion of the trial court and will not be reversed in the absence of a palpable abuse of discretion.

*Id.*, 507 Pa. at 454, 490 A.2d at 818 (citations omitted).

■ In the present case, we believe that the trial judge did not abuse his discretion in refusing to excuse prospective jurors six and ten for cause. During voir dire, both prospective jurors stated that they could render a fair and impartial verdict despite their respective potential biases. Prospective juror ten, Ms. Kisthart, responded affirmatively when the trial judge asked her if in deciding this case she could put the newspaper article about the case out of her mind. Prospective juror six, Ms. Baranowski, answered "no" when the assistant district attorney asked her if her decision in this case would be influenced by the fact that a Commonwealth witness, District Attorney Preate, had prosecuted the trial of her brother's murderer. Further, Ms. Baranowski did not indicate during voir dire that she personally knew District Attorney Preate, and "(a) remote relationship to an involved party is not a basis for disqualifi-

cation where a prospective juror indicates during voir dire that he or she will not be prejudiced." *Colson,* 507 Pa. at 454, 490 A.2d at 818. We therefore hold that the trial judge did not abuse his discretion in refusing to excuse for cause prospective jurors six and ten.

█ Further, assuming *arguendo* that the trial judge did abuse his discretion in refusing to strike the two prospective jurors for cause, the error was harmless since appellant did not exhaust his peremptory challenges prior to the seating of the jury. In Pennsylvania, "it is ... error to force a defendant to use his peremptory challenges on a prospective juror who should have been excused for cause and that defendant then exhausts his peremptories prior to seating the jury." *Commonwealth v. Stamm,* 286 Pa.Super. 409, 415, 429 A.2d 4, 7 (1981). A trial court's abuse of discretion in refusing to remove a prospective juror for cause, however, does not necessarily constitute reversible error, since a trial court's improper refusal to remove a juror for cause is harmless error if the defendant does not exhaust his peremptory challenges prior to the seating of the jury. *See Commonwealth v. Jones,* 477 Pa. 164, 167, 383 A.2d 874, 876 (1978) (it is harmless error to refuse a proper challenge for cause where the proposed juror was excluded by a peremptory challenge and the defense did not exhaust its peremptory challenges); *Commonwealth v. Moore,* 462 Pa. 231, 238, 340 A.2d 447, 451 (1975) ("It is well settled that when, as here, the defense does not exhaust its peremptory challenges, it is harmless error to overrule a challenge for cause which should have been sustained, if the juror is actually excluded by a peremptory challenge."). *Accord Commonwealth v. Johnson,* 299 Pa.Super. 172, 182, 445 A.2d 509, 514 (1982) (when a defendant is forced to use one of his peremptory challenges to excuse a prospective juror who should have been excused for cause, and then exhausts his peremptories before the jury is seated, a new trial will be granted).

█ Under Pa.R.Crim.P. 1126, two factors are considered to determine the number of peremptory challenges

a defendant will be allowed: (1) whether the defendant is being tried singly or jointly, and (2) the nature of the charges against defendant. A single defendant who is being tried on a misdemeanor charge is permitted five peremptory challenges. *See* Pa.R.Crim.P. 1126(a)(1). In the present case, appellant was arrested and charged with the crimes of hindering apprehension or prosecution, pursuant to 18 Pa.C.S.A. Sec. 5105, and criminal conspiracy to hinder apprehension or prosecution, pursuant to 18 Pa.C.S.A. Sec. 903. Both crimes are misdemeanors. Appellant, who was charged with two misdemeanors and tried alone was consequently permitted five peremptory challenges. Our review of the record, however, establishes that appellant's counsel employed only two of his peremptory challenges, against prospective jurors six and ten. Appellant, consequently, still had three of his five peremptory challenges remaining when the jury was seated. Therefore, even if the trial judge erred in refusing to excuse prospective jurors six and ten for cause, the error was harmless since appellant still had several peremptory challenges remaining when the jury was empanelled. *See Jones,* 477 Pa. at 167, 383 A.2d at 876; *Moore,* 462 Pa. at 238, 340 A.2d at 451. We find that appellant was not prejudiced by the trial judge's refusal to excuse for cause prospective jurors six and ten, and we reject appellant's contention as meritless.

Judgment of sentence affirmed.

WIEAND, J., dissents.

## APPENDIX

Judge Munley's Trial Court Opinion

83 CR 886

## IN THE COURT OF COMMON PLEAS OF LACKAWANNA COUNTY

## OPINION

This matter is before the court by way of Defendant Thomas Hashem's Motion for a New Trial and In Arrest of Judgment.

On December 19, 1983, the Defendant was arrested and charged with the crimes of hindering apprehension or prosecution, 18 Pa.C.S.A. § 5105, and criminal conspiracy to hinder apprehension or prosecution, 18 Pa.C.S.A. § 903. These charges resulted from his involvement in attempting to warn a large group of drug dealers, operating in the City of Scranton, of impending discovery through court ordered electronic surveillance. The Defendant was tried before a jury on May 8 and 9, 1985, and was found guilty on both charges.

In support of Defendant's motion, he makes numerous arguments which we will address in the following order: paragraphs 5 through 27, seriatim, followed by 2 through 4.

Allegations 5 and 6 assert the court erred in denying Defendant's motion to strike for cause two jurors, juror, number six and juror number ten. It is well established that striking a juror for cause is a matter left to the sole discretion of the trial court. And the trial court's determination will not be overturned unless the court has abused it's discretion. *Commonwealth v. Fletcher*, 245 Pa.Super. 881 [88], 369 A.2d 307 (1976).

Juror number six stated that she was familiar with a Commonwealth witness, District Attorney Ernest Preate, in that sometime earlier he had prosecuted a murder case, one where the juror's brother was the victim. When questioned whether the fact that the District Attorney had prosecuted the earlier trial would "in anyway", affect her decision in this case, juror number six responded no. And when asked whether she could be fair and impartial to both sides, she responded yes.

Juror number ten stated that she had read the beginning of an article about the case, but did not go into the details. Upon questioning by the court, the juror responded that this would not prevent her from rendering a fair and impartial verdict.

The test of disqualification is the juror's ability and willingness to eliminate the influence of his scruples and render a verdict according to the evidence and this is to be

determined by the exercise of discretion of the trial judge, based on the juror's answers and demeanor. *Commonwealth v. Bighum*, 452 Pa. 554, 307 A.2d 255 (1973); *Commonwealth v. Colon*, 223 Pa.Super. 202, 299 A.2d 326 (1973) [1972]. Based on this review of the voir dire we find no error or abuse of discretion in denying Defendant's motion to strike for cause.

In allegation number 7 Defendant argues that prior to Defendant's trial two articles appeared in the Scranton Times Evening Edition and that due to this pretrial publicity the court's refusal to grant Defendant's motion for a change of venue was error. After reviewing the transcript of the voir dire in this case, we discern no record of actual prejudice in the seated jurors. Of the thirty-two potential jurors examined during voir dire, only two indicated they had heard or read anything about the case; neither were selected as jurors. As stated in *Commonwealth v. Casper*, "[O]ne who claims that he has been denied a fair trial because of prejudicial pre-trial publicity must show actual prejudice in the empaneling of the jury." *Id.* [481 Pa. 143, 150] 392 A.2d 287, 291 (1978).

The Supreme Court in *Commonwealth v. Richardson*, [476 Pa. 571], 383 A.2d 510 (1978) delineated factors to be considered in assessing whether a denial of such motion was indeed an abuse of a trial judge's discretion. These are:

1) the length of time between the publicity and the trial, 2) the nature and extent of the publicity (whether inflammatory or basically factual and how pervasively the information has been disseminated), 3) the degree to which the information is attributable to police or prosecution sources, 4) the community atmosphere, 5) the trial court's efforts to insulate the jury against and/or to diminish the impact of the publicity, and 6) the probable efficacy of a change of venue.

*Richardson*, supra. [476 Pa.] at 586 [383 A.2d 510].

We find after reviewing all of the foregoing that Defendant has clearly failed to meet his burden of proof as to

showing any prejudice, and Defendant's motion for a change of venue was appropriately denied.

In paragraphs 8 through 10 the Defendant contends that the Commonwealth failed to lay a proper foundation to qualify Officers Rescigno and Tell, and Michelle Kulick as competent witnesses to give their opinions as to Defendant's voice on tape. In paragraph 11 Defendant challenges the admission of Commonwealth's Exhibits number one and two (the actual tapes of these wire taped communications) on the grounds of relevancy. It is the defense's position that these tapes were not relevant because there was not sufficient evidence on the issue of identity.

In order for a recording to be received in evidence, it must be established that it is a true and correct reproduction of the statements made and the voices thereon must be properly identified. *Commonwealth v. Wright,* [228 Pa.Super. 251], 323 A.2d 389 (1974). And it is not error to allow an acquaintance of a defendant to identify a voice on a tape recording as that of a defendant. *Commonwealth v. Topa,* [269 Pa.Super. 473], 410 A.2d 354 (1979).

The defense stipulated at pretrial to the admissibility of the tapes. Specifically, the defense stipulated to the authenticity and only objected to the sufficiency of evidence of identification and relevancy.

At trial, the Commonwealth called Officers Rescigno and Tell to identify the Defendant's voice. Both Officers testified to knowing Defendant for an excess of fifteen years— Officer Rescigno for approximately seventeen years (N.T. Trial at 111–40) and Officer Tell for approximately twenty years (N.T. Trial at 111–48) and that they had conversed with the Defendant on numerous occasions throughout the years. Both officers positively identified the voice on the tape recording as Defendant's, and gave detailed testimony as to the distinctiveness and uniqueness of Defendant's voice.

At trial, the testimony of Officers Rescigno and Tell preceded Michele Kulick's. Ms. Kulick was a party to the taped telephone conversation during which the Defendant

spoke of the phones being tapped. It is beyond cavil that before one of two parties to a telephone conversation may testify as to the substance of the conversation, the identity of the other party must be established. *Commonwealth v. Carpenter*, [472 Pa. 510], 372 A.2d 806 (1977). Ms. Kulick testified that she knew the Defendant, that he was present when drug transactions were discussed, and positively identified him as the other party in a taped telephone conversation before she gave her testimony as to the substance of their telephone conversation about the wiretaps.

We find the Commonwealth's foundation was clearly sufficient to allow these individuals to give their opinion as to the voice identification, and to permit Ms. Kulick to testify as to the substance of the telephone conversation. Consequently, the tapes of the wire taped communication were relevant and properly admitted into evidence.

Defendant argues in paragraph 12 that the trial court erred in permitting the jurors to read Commonwealth's Exhibits Three, Four and Five which were transcripts of the three wire taped communications used at trial while the taped conversations were played in the courtroom. These transcripts were prepared by the District Attorney's office and were made available to the Defendant at least a year prior to trial. On the day of trial the Defendant objected to the accuracy of the transcripts claiming that portions of the tape were inaudible, that words were supplied, and also objected to the identification of the voices printed in the margins. After listening to a tape, in camera, the objections were overruled by the trial court.

In *Monroe v. United States*, 98 U.S.App.D.C. 228, 234 F.2d 49, 55 (1956), cert. denied, 352 U.S. 873, 77 S.Ct. 94 [1 L.Ed.2d 76] (1956), the standard for admissibility of tape recordings was phrased as follows:

"Unless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy the recording is admissible, and the decision should be left to the sound discretion of the trial judge."

The trial court found that the recordings of the intercepted conversations were not too unintelligible to be admitted into evidence, and that the transcripts were accurate in all material respects.

We also note that Defendant's argument that he "was prejudiced from said self serving evidence prepared by the District Attorney", . . . was thoroughly addressed in *United States v. Lawson*, 347 F.Supp. 144 ([E.D.Pa.]1972). In *Lawson*, the Court ordered the Government to prepare an accurate transcript of relevant taped conversations—*with the speakers identified in accordance with the Government's contention* —for jury use at trial. The transcripts were used solely as an aid to the jury's understanding of the taped conversations. As in *Lawson*, supra., the transcripts in this case were prepared in a similar format and were not admitted into evidence but were distributed to the jury immediately prior to the playing of the tapes and were collected after their conclusion. The transcripts were not sent out with the jury during deliberations. We note that the Defendant was free at all times to point out any transcript discrepancies through cross-examination of Michele Kulick. And, in fact, the Defendant requested and was permitted to replay portions of the tapes during cross-examination.

For all the foregoing reasons, we believe that the use of transcripts, sub judice, provided the most reasonable means of facilitating the presentation of the telephonic interceptions to the jury, and did not constitute prejudicial error.

In a related allegation, in paragraph 23 the Defendant claims error in denying Defendant's request for a continuance so that the Judge and attorneys could review the actual tapes for accuracy prior to playing them to the jury. In Defendant's brief for his Motion for New Trial and Motion in Arrest of Judgment the Defendant refers the Court to a Change of Venue argument in support of this allegation. We fail to see what relevance an argument concerning pre-trial publicity has here. Nonetheless, we will briefly address this issue.

As stated above, the Defendant had long had available to him a copy of the transcripts used in court, as well as tapes of the recorded conversations. Yet, at no time prior to trial did the Defendant move to dismiss or suppress the tapes or transcripts based on their accuracy. Defendant's first objection as to the accuracy of the transcripts was raised on the day of trial at a pre-trial conference. At this conference, the trial court played and reviewed the transcripts of the taped conversation between the Defendant and Michele Kulick in the presence of both attorneys before overruling Defendant's objection.

The judge in *Lawson*, supra., held a pre-trial hearing immediately prior to the formal commencement of the trial to personally compare the tape recordings with the written transcripts prepared by the government to determine their accuracy. The *Lawson* hearing was held on November 1, 3 and 4, 1971, and the trial commenced on November 4, 1971. After careful consideration the *Lawson* trial judge concluded, despite the contrary opinion of defense counsel, that the transcripts were an accurate depiction of the contents of the tape recording except for some minor discrepancies which were considered immaterial.

In light of the pre-trial review of the tapes and transcript by the court, as well as the ample period of time prior to trial during which Defendant did not contest their accuracy, we find the request for a continuance was appropriately denied.

Allegations 13 through 17 concern the testimony of Lackawanna County District Attorney Ernest Preate, Jr. First, Defendant argues that the entire Lackawanna County District Attorney's Office should have been disqualified from prosecuting the case since the District Attorney was to be called as a material witness. The remaining allegations concern the contents of the District Attorney's testimony: that the District Attorney's testimony was cumulative or hearsay; that the District Attorney was argumentative to the point of prosecutorial conduct; and that he gave his

opinion on the ultimate issue of the case thus upsurping the function of the jury.

We can easily dismiss the first of Defendant's arguments. There is simply no legal basis for requiring the appointment of a special prosecutor when a district attorney—who is not the trial attorney—will testify for the Commonwealth as a factual witness. Although the Defendant has made a novel argument to this effect he has not, and cannot, cite a legal authority for such a holding.

Defendant argues that the Rules of Civil Procedure provide that where any attorney *acting as trial counsel* is called as a witness on behalf of the party whom he represents, the court may determine whether the attorney may continue to act as trial counsel. Although there is no analogous rule pertaining to attorneys as witnesses in criminal cases, Defendant asserts this practice should be followed in criminal cases since it is a breach of good professional conduct. In the case at bar, however, District Attorney Preate was not acting as trial counsel, and testified as a factual witness.

Moreover, we note that the principle of disqualification which applies to private law firms is simply not so strong when applied to government agencies in general. A disqualification of the entire district attorney's office was *not* required in *Commonwealth v. Miller*, [281 Pa.Super. 392], 422 A.2d 525 (1980), where the circumstances for disqualification were more compelling than those presented here. In *Miller*, a public defender, who had represented a defendant's cofelon when the case originally arose, had become a district attorney at the time of defendant's trial. As the court in *Miller* stated: "The [disqualification] principle should be all the more narrowly construed when applied to the office of district attorney; because the district attorney is not an advocate in the ordinary sense of the term, his duty is to seek justice, to protect the innocent as well as to convict the guilty." 281 Pa.Superior Ct. 392, at 399, 422 A.2d 525, at 529.

We will dismiss Defendant's allegation of error in "allowing Attorney Preate to testify as to hearsay on countless occasions." It is hornbook law that what a person knows firsthand from his own knowledge is not hearsay, and that out-of-court statements that are not offered to prove the truth of the matter but rather to explain a course of conduct are non-hearsay. See *Commonwealth v. Crus [Cruz]*, 489 Pa. 559, 414 A.2d 1032 (1980); and *Commonwealth v. Sampson*, 454 Pa. 215, 311 A.2d 624 (1973). In view of the purpose for which the out-of-court statements were offered, they were admissible and Defendant's motions were properly denied.

Likewise we will dismiss Defendant's allegation in paragraph 17, that the District Attorney testified in an argumentative manner, and claims that he did not have a fair trial by reasons of the frequent arguments, interjections and remarks between counsel and witness Preate.

The record discloses both counsel were zealous in behalf of the client and their cause. The conduct of a witness is within the control of the trial judge and it cannot be said from a review of the record that the actions of Preate were such as to prejudice the Defendant or his cause. Witness Preate was called by the Commonwealth, and any prejudice from his polemic conduct or words would naturally inure to the benefit of the Defendant and against the Commonwealth. The manner in which the District Attorney testified may be described as "magniloquent", but it furnishes no cause to grant a new trial.

In paragraph 15, Defendant asserts that the trial judge erred in allowing District Attorney Preate to give his opinion on the ultimate issue in the case. Defendant rests his argument upon the decision reached in *Commonwealth v. Russell*, [456 Pa. 559], 322 A.2d 127 (1974), wherein a former district attorney, testifying for purposes of impeachment, stated from the stand that "there was no doubt, no doubt whatsoever, that he [defendant] had masterminded this crime." In reversing and granting a new trial, the court noted that the prosecutor had "made every effort to

impress upon the jury the witness was a 'former assistant district attorney' ... [which] clearly bear[s] upon his credibility ..." 456 Pa. at 564, 322 A.2d at 130. Moreover, the court concluded that "when this witness made the statement he fully knew it was improper and highly prejudicial," and entirely without any proper foundation. *Id.*

The courts have consistently expressed disapproval when District Attorneys have interferred with the jury's function of resolving credibility conflicts by inserting their personal opinions as to the *believability* of witnesses. *Commonwealth v. Russell,* [456 Pa. 559], 322 A.2d 127 (1974); See also, *Commonwealth v. Lipscomb,* [455 Pa. 525], 317 A.2d 205 (1974); *Commonwealth v. Toth,* [455 Pa. 154], 314 A.2d 275 (1974); *Commonwealth v. Renty [Revty,* 448 Pa. 512], 295 A.2d 300 (1972); *Commonwealth v. Potter,* [445 Pa. 284], 285 A.2d 492 (1971).

We agree with the prosecution, however, that *Russell* is not controlling. The prosecution argues that the statement by the the District Attorney, that "[the investigation] was hindered", was a factual statement strongly based upon the evidence, with proper foundation, and was not merely opinion testimony submitted to attack Defendant's credibility. Unlike the former District Attorney in *Russell,* Preate testified from personal knowledge of the facts.

Under the wiretap law of Pennsylvania, each order authorizing the interception of any wire communication requires the attorney general or the district attorney, or their designees, to be responsible for the supervision of the interception. 18 P.C.S.A. §5712(c). Preate testified that he was the supervising attorney of the entire wiretapping investigation, as per an agreement with the Attorney General of Pennsylvania. (N.T. Trial at 111–124).

Preate testified as to the breadth and scope of the investigation and as to the effect of the Defendant's conduct on the investigation. His testimony was not cummulative of the testimony of Commonwealth witness Richard C. Weatherbee, Director of the Bureau of Narcotics Investigation for the Pennsylvania Office of the Attorney General. Weather-

bee expounded on the wiretap installation procedures followed in drug investigations, and specifically how the instant case was in conformance with government regulations.

Preate gave an extremely detailed description of the drug investigation and how this investigation was hampered or impeded by Defendant's warning the targets of the surveillance of the installation of wiretaps on their telephone lines. He elaborated on deliberations of the supervisory body in this sudden exigency, as well as the recorded slowdown of drug activity. This was factual testimony of fundamental elements of the crimes charged, from a person with personal knowledge.

Furthermore, as is stated in *Commonwealth v. Goosby*, [450 Pa. 609, 611], 301 A.2d 673, 674 (1973), quoting *Commonwealth v. Phillips*, [183 Pa.Super. 377, 382], 132 A.2d 733, 736 (1957) (citations omitted and emphasis deleted):

> "Every unwise or irrelevant remark made in the course of trial by a judge, a witness, or counsel does not require the granting of a new trial. A new trial is required when the remark is prejudicial, that is, when it is of such a nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial."

The effect of remarks such as those made by Preate depends on the atmosphere of the trial and the proper action to be taken is within the discretion of the trial court. See *Commonwealth v. Stoltzfus*, [462 Pa. 43, 61], 337 A.2d 873, 882 (1975).

Examining this testimony in the context of the trial as a whole we note that the statement came in during the third day of a three day trial in which six witnesses testified; the prosecuting attorney did not persist in the challenged line of questioning; and the Defendant's credibility was never directly tested in that the Defendant declined to testify. Moreover, the Commonwealth's witnesses included the Director of the Bureau of Narcotics Investigation for the Pennsylvania Office of the Attorney General, a detective

with the Lackawanna District Attorney's Office, and two Scranton Police Officers in addition to District Attorney Preate.

The jury was cautioned by the judge on the credibility of witnesses (N.T., Trial, at 11–24), and by defense counsel in his closing. Furthermore, the court carefully charged the jury as to the correct law on hindering apprehension or prosecution.

We believe that any possible prejudice derived from the District Attorney's statement was successfully neutralized by these statements by the defense attorney and the trial court. Within the context of the entire trial, the possibility that this brief exchange had a prejudicial effect on the jury is remote. Too remote to find that the statement constituted reversible error.

Paragraphs 18, 24 and 26 recite issues raised in Defendant's Petition for Writ of Habeas Corpus, and resolved by Judge Walsh of this Court on April 4, 1985. In Defendant's Brief for Motion for New Trial and Motion in Arrest of Judgment, Defendant has merely incorporated the brief submitted to Judge Walsh on the Habeas Corpus issues and does not allege any new evidence or evidence produced at trial that would provide a basis for reconsideration. We are in complete accord with the findings of Judge Walsh and their conformance with the law. Furthermore, we are mindful of the general rule that one judge may not overrule the decision by another judge of the same court in the same case. *Reifinger v. Holiday Inns, Inc.*, [315 Pa.Super. 147], 461 A.2d 839 (1983). Absent any new evidence, it would be improper to overrule the Order of Judge Walsh. *Bersani by Bersani v. School District of Philadelphia*, [310 Pa.Super. 1], 456 A.2d 151 (1982).

Defendant's allegations in paragraphs 25 and 27 claim error by Judge Walsh in denying Defendant's Omnibus Pre-trial Motion. Again, Defendant has not introduced new evidence that would require us to overrule the decision of a judge of this court. We concur with the April 10, 1985 decision of Judge Walsh to deny Defendant's Motion to

Suppress intercepted wire and oral communications, and will not disturb his findings in the absence of new evidence. *Bersani by Bersani v. School District of Philadelphia, Id.*

In paragraph 19, the Defendant claims error in refusing to dismiss the charges as de minimis infractions. 18 Pa.C. S.A. § 312 requires the trial court to dismiss the prosecution on its own accord upon a determination that the defendant's conduct involves de minimis infractions. The charges against the Defendant involved felonies of the third degree, carrying seven year prison terms. The evidence fully established the Defendant intended to aid the drug dealers that were the targets of the drug investigation in escaping criminal prosecution and conviction. We perceive absolutely no basis for dismissing such serious criminal matters as trivial.

Paragraph 20 contains objections to the charge to the jury. In one objection Defendant claims that since the judge did not dismiss the charges as de minimis under § 312, the judge should have informed the jury of that section of the law and given the jury the opportunity to apply this principal if they found it applicable. It should be noted that § 312 merely says the court shall dismiss the case when it is a de minimis infraction. It does not state that the judge shall charge the jury that they are allowed to find the defendant not guilty if it is a de minimis infraction.

Defendant also claims error in denying to charge on the issue of identity. The Pennsylvania Standard Criminal Jury Instruction Identification (No. 4:07) states that "[n]o instruction on identification testimony should be given when the identification witness had a good opportunity for positive identification, he is positive in his identification, and his identification is not weakened by prior inconsistent identification or prior failure to identify but remains, even after cross-examination, positive and unqualified. To give an instruction on identification under these circumstances would serve only to confuse the jury."

The identification statements made by Officer Recigno and Tell and by Ms. Kulick were not weak or doubtful.

Their testimony established their familiarity with the Defendant, and with his voice. Consequently, this Court was not faced with a possible wrongful conviction based on a mistaken identification, and Defendant's request was properly denied.

Moreover, it is not proper to isolate selected portions of a charge; the standard is to look to the charge as a whole to see if it fairly guided the jury. *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A.2d 820 (1954). The trial judge correctly charged the jury generally on the credibility of witnesses, the presumption of innocence and reasonable doubt, and the elements of the crimes involved. Our review of the charge as a whole reveals that the jury was fairly guided.

In the next assignment of error, paragraph 21, the Defendant argues that the court erred in granting all of the Commonwealth's Motions to Extend the Time for Commencing Trial and denying the Defendant's Motion to Dismiss under Rule 1100. On April 3, 1985, a hearing was held on this matter before Judge Walsh, and in Defendant's Motion for New Trial Defendant incorporates the legal arguments present there. On April 10, 1985 Judge Walsh granted Commonwealth's Motion for Extension of Time finding the disputed delay time not stipulated to by the parties was attributable to court delay, and not lack of due diligence on the part of the Commonwealth. After a careful review of the record, and in the absence of new evidence, we find Defendant's argument has no merit.

In paragraph 22 the Defendant complains that the bail hearing, at which the trial judge presided, rendered his sitting at the trial prejudicial. After hearing the testimony of the bail hearing, the trial judge set bail and placed the Defendant under a number of restrictions regarding his driver's license and his association with other individuals, and was placed under the supervision of the Lackawanna County Probation Office. A petition to modify the bail condition on the basis that the effect of the condition was to punish Defendant without an adjudication of guilt was denied by the Superior Court on May 1, 1984. The Defend-

ant successfully appealed all but one of these conditions to the Supreme Court of Pennsylvania on October 17, 1984.

It is Defendant's contention that the trial judge had made a determination of Defendant's guilt at the pre-trial level, and therefore should have excused himself from the trial. However, a previous acquaintance with a case does not disqualify a judge to sit at trial as a matter of law. *Commonwealth v. Conrad*, [241 Pa.Super. 324], 361 A.2d 421 (1976). "The party seeking disqualification of a trial judge has the burden of proving evidence tending to show bias, prejudice or unfairness, and if the trial judge feels able to hear and dispose of the case fairly and without prejudice, the decision not to withdraw will not be reversed on appeal." *Commonwealth v. Kane*, [199 Pa.Super. 89], 184 A.2d 405 (1962).

The defense first requested the scheduled trial judge to consider recusal at the pre-trial conference. At this conference, the trial judge disclaimed any prejudice against the Defendant and stated that he had, on numerous cases, employed the types of bail conditions imposed on the Defendant. As the Court stated at pre-trial:

"I'm not the trier of fact. This is a jury case, number 1. Secondly, the conditions I imposed on bail are unrelated completely to the issues that the jury will consider in this case here. Thirdly, I have no feeling whatsoever, previously or now, towards your client. I do not know him; and I find myself just without any bias of any nature whatsoever.

See, I do not think there is any merit at all, but I want to make it clear on the record there is no basis for it. And, as I mentioned earlier, the conditions that I imposed on the bail are sometimes ... I have often times used those kinds of conditions in a variety of criminal charges, not just murder cases. So, I have no bias, I have no finding at all of any kind of prejudice towards your client, or against him. I do not know him, and I do not find any basis for your petition. I respect it, but I will deny it."

160

Furthermore, the determination of guilt was made by the jury and the jury was never apprised of the conditions set by the judge at the bail hearing.

In paragraphs 2 and 3 Defendant contends that the verdict was contrary to the evidence and/or contrary to the weight and sufficiency of the evidence and findally, in paragraph 4, Defendant alleges the verdict is contrary to the law. The Defendant was convicted of hindering apprehension and prosecution, and ciminal conspiracy.

Hindering apprehension and prosecution is defined in 18 C.P.S.A. § 5105(a)(4) as:

"(a) ... A person commits an offense if, with intent to hinder the apprehension, prosecution, conviction or punishment of another for crime, he:

(4) warns the other of impending discovery or apprehension, except that this paragraph does not apply to a warning given in connection with an effort to bring another into compliance with law;"

and criminal conspiracy is defined in 18 C.P.S.A. § 903 as:

"(a) Definition of conspiracy.—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime."

Accepting as true all the evidence upon which, if believed, the jury could properly have based its verdict, and all reasonable inferences arising therefrom, we find the evidence was more than sufficient to prove Defendant's guilt beyond a reasonable doubt. *Commonwealth v. Eddington*, [255 Pa.Super. 25], 386 A.2d 117 (1978).

The Commonwealth produced three competent witnesses who positively identified the Defendant's voice as the caller who tipped the targets of a drug investigation of the fact that their phones were wire-tapped. One witness, a co-conspirator, specifically testified that she had received a tip-off from the Defendant regarding the electronic surveillance. Moreover, the actual taped phone conversation was played for the jury at trial.

Clearly, a jury could reasonably find that the Defendant's actions were deliberately taken to enable Joseph Hashem, Michele Kulick, and others involved in drug transactions to take steps to evade discovery. From this, and other incriminating evidence produced at trial, it is clear that the jury's conclusion in this matter was based upon substantial evidence and in accordance with the law.

Defendant's Motion for New Trial and In Arrest of Judgment is denied.

WIEAND, Judge, dissenting:

Thomas Hashem was arrested and charged with hindering apprehension or prosecution [1] because he had called Michelle Kulick, whose telephone was being electronically monitored by law enforcement officials, to warn her of the intercept. The only basis for the charge against Hashem was his intercepted telephone call to Michelle Kulick. A criminal complaint was issued against Hashem without prior judicial authority to disclose the contents of the intercepted conversation, as is required by 18 Pa.C.S. § 5718. Both the charges against Hashem and his subsequent conviction, therefore, were tainted by the Commonwealth's violation of the Pennsylvania Wiretap and Electronic Surveillance Control Act. The majority affirms the subsequent conviction. I dissent. In my opinion, the conviction was based on an illegal disclosure of information obtained in a telephone intercept.

Section 5718 of the Crimes Code provides as follows:

---

1. 18 Pa.C.S. § 5105.

> When an investigative or law enforcement officer, while engaged in court authorized interceptions of wire or oral communications in the manner authorized herein, intercepts wire or oral communications relating to offenses other than those specified in the order of authorization, the contents thereof, and evidence derived therefrom, may be disclosed or used as provided in section 5717(a) (relating to disclosure or use of contents of wire or oral communications or derivative evidence). Such contents and evidence may be disclosed in testimony under oath or affirmation *in any criminal proceeding* in any court of this Commonwealth or of another state or of the United States or before any state or Federal grand jury when *in advance of such disclosure and on application to a court, the court finds that the contents were listed in the final report, pursuant to section 5712(e) (relating to issuance of order and effect), and were otherwise intercepted in accordance with the provisions of this chapter. Such application shall be made as soon as practicable.*

18 Pa.C.S. § 5718 (emphasis added). As the majority has observed, this statute makes clear that before law enforcement officials can properly use intercepted telephone conversations as evidence of crimes not listed in the original wiretap application, "(1) the contents of the conversations must be listed in the final report pursuant to 18 Pa.C.S.A. Sec. 5712(e); (2) the conversations must be intercepted in accordance with the other provisions of the wiretap act; (3) an application to use the recordings must be made to a judge of the Superior Court; and (4) the application must be made as soon as practicable." Majority Op. at 131.

In the instant case, the representatives of the Commonwealth disclosed the substance of the intercepted conversation without prior authorization to do so. Unauthorized disclosures occurred when representatives of the Commonwealth filed a criminal complaint against Hashem; when they established a prima facie case against him at the preliminary hearing; and when the District Attorney filed a

criminal information. It was not until all of these disclosures had been made and almost twenty months after the final report had been filed without any reference to criminal activity by Hashem that the Commonwealth finally moved to amend the final report and requested a judge of the Superior Court to authorize disclosure of evidence of the new and unrelated offense which Hashem allegedly had committed. This was too late. When the Commonwealth filed charges and produced evidence thereof by using an unauthorized disclosure of an intercepted communication, it violated the statutory mandate. A prosecution based on such an illegality, in my judgment, was irremediably tainted and should not be permitted.

In *United States v. Marion*, 535 F.2d 697 (2d Cir.1976), a justice of the New York State Supreme Court had authorized taps to be placed on the telephones of two establishments in Manhattan. The wiretaps had been authorized for the purpose of intercepting communications relating to the state offenses of grand larceny by extortion, felonious assault, conspiracy and possession of dangerous weapons. During the subsequent electronic surveillance, two conversations between defendant and others were intercepted in which defendant discussed, inter alia, the delivery of an unregistered gun. Several months later, defendant appeared before a federal grand jury which had been conducting an investigation of possible violations of federal law, including interferences with interstate commerce by threats and violence and interstate travel and transportation in aid of racketeering. During his testimony defendant was questioned about conversations which had been intercepted during the state authorized wiretaps. After giving inconsistent and unconvincing explanations for the recorded statements, the defendant was indicted by the grand jury on charges of perjury and obstruction of justice. Prior to trial, defendant moved to have the indictment dismissed because the evidence obtained from the state authorized wiretaps had been presented to the federal grand jury in violation of 18 U.S.C.

§ 2517(5).[2] More specifically, defendant alleged that the statute had been violated by the government's failure to file an application to obtain authorization for the use of the intercepted communications prior to using them before the grand jury. The district court denied defendant's motion and, after trial by jury, defendant was convicted on all counts. On appeal, the Court of Appeals reversed.[3] It held that the statute had, in fact, been violated. In so holding, the Court construed the "as soon as practicable" language in Section 2517 to mean that if law enforcement officials are to use intercepted communications as evidence of crimes other than those listed in the order authorizing the wiretap, they must file an application and obtain judicial approval "as soon as practicable" after they learn (or should reasonably have learned) of the relevant contents of the communications. *Id.* at 707. "In all events, however, approval of the serendipitous interceptions must be obtained *before* their contents or fruits are used ... in any criminal or grand jury proceeding." *Id.* at 704 n. 14 (emphasis in original). Because the government in *Marion* had failed to obtain judicial approval before disclosing the contents of the intercepted communications in the grand jury proceedings, the Court determined that the statute had been violated. This violation, the Court held, required that defendant's conviction be reversed. The Court said:

> [B]ut for the two challenged conversations, [defendant] would not have been called before the grand jury. His testimony before that body, arguably "derived from" those calls, and recordings of the interceptions, constituted the Government's principal evidence in his federal trial for perjury and obstruction of justice. Under these cir-

2. This section of the statute is substantially similar to 18 Pa.C.S. § 5718. For the text of the federal statute see, *supra,* majority opinion at 754–755.

3. Defendant had also been charged with an additional count of obstruction of justice based upon his failure to adequately explain another intercepted communication in which he had discussed a plan to destroy the property of another in order to influence a pending corporate vote. His conviction on this count was affirmed for reasons not here relevant.

> cumstances, his conviction for perjury and the first count
> of obstruction of justice are irremediably tainted by the
> § 2517(5) violation.

*Id.* at 704 n. 15.

In the instant case, as in *Marion,* the Commonwealth used the intercepted communications as the sole basis for charging Hashem with a criminal offense. It also used his intercepted conversation as evidence to establish a prima facie case at appellant's preliminary hearing. It did so without having included a reference thereto in the necessary final report of the authorized intercept and without obtaining judicial authorization to disclose the communication pertaining to a separate offense. This was a clear violation of Section 5718. Because the same serendipitous interception formed the sole basis for the facts alleged in the information, as well as the principal evidence at trial, I would hold that the information and subsequent conviction were "irremediably tainted" by the Commonwealth's violation of Section 5718.

Moreover, I am unable to conclude, as does the majority, that the Commonwealth's application to disclose the unrelated offense was filed "as soon as practicable." The mandatory language of the statute, as the Court of Appeals held in *United States v. Marion, supra,* requires that the application be made as soon as practicable after law enforcement officials learn or should have learned the significance of the intercepted communication. Here, the communication was intercepted on December 1, 1982; Hashem was arrested for hindering apprehension or prosecution on December 19, 1983; and application was made to a judge of the Superior Court to use the intercept in January, 1985. The application to use the intercepted call was filed only after Hashem, in March, 1984, had moved to suppress the intercepted conversation because of the Commonwealth's failure to comply with 18 Pa.C.S. § 5718. The Commonwealth knew that Hashem had warned Kulick of the tap on her phone when law enforcement agents intercepted Hashem's call; and the Commonwealth certainly understood the

significance of the intercepted call when, on December 19, 1983, it caused Hashem to be arrested for hindering apprehension or prosecution. Still, the Commonwealth did not act to obtain authority to disclose Hashem's intercepted telephone call for another thirteen months. Indeed, the Commonwealth waited more than seven months after the defendant had moved to suppress the same before it moved to amend its final report and obtain authorization to use the intercept as evidence at trial. Under these circumstances, I am unable to agree with my brethren of the majority that the Commonwealth moved "as soon as practicable." For these reasons, I would reverse the judgment of sentence and order appellant discharged.

I must respectfully disagree also with the majority when it holds that it was proper for the court to allow the District Attorney to take the stand as a Commonwealth witness and testify, in response to questions asked by his assistant, that Hashem's telephone call had hindered the District Attorney's investigation of drug dealers in the Scranton area.[4]

In *Commonwealth v. Russell*, 456 Pa. 559, 322 A.2d 127 (1974), the defendant was convicted of murder in the first degree, aggravated robbery, burglary, and conspiracy. At trial, the court had permitted a former district attorney to testify that the defendant had been arrested "only after very, very careful scrutinizing of the evidence and independent interrogation of other witnesses ... [and o]nly when there was no doubt, no doubt whatsoever, that he had masterminded the crime." *Id.*, 456 Pa. at 562–563, 322 A.2d at 129. On appeal, the Supreme Court held that this was error because the witness' testimony "was a clear expres-

---

4. The District Attorney proved to be an argumentative witness. Not only did he argue with defense counsel when objections were made during the course of his testimony, but he also argued against those objections directly to the trial judge. What the District Attorney attempted, and indeed was permitted to do, was play the dual role of advocate and witness while he was on the stand. In my judgment this was egregiously improper. By permitting the witness to play this dual role, the court added credence to his testimony and created a substantial likelihood of prejudice to the defense.

sion of guilt on the central issue of the case, i.e. conspiracy." *Id.* The Court explained:

This Court has consistently made it clear we will not allow the district attorneys of this Commonwealth to express their personal opinion or beliefs on issues which are within the province of the jury, when such opinions are not based on fair arguments from the evidence presented. See *Commonwealth v. Lipscomb,* [455], Pa. [525], 317 A.2d 205 (1974); *Commonwealth v. Toth,* 455 Pa. 154, 314 A.2d 275 (1974); *Commonwealth v. Revty,* 448 Pa. 512, 295 A.2d 300 (1972); *Commonwealth v. Potter,* 445 Pa. 284, 285 A.2d 492 (1971). We believe the instant case fits squarely within this line of cases. As recently as *Lipscomb,* we made it emphatically clear that expression of personal belief has no place in the argument of a district attorney to the jury. Herein the former assistant district attorney not only expressed his opinion on the guilt of [defendant], but he also expressed an opinion on the believability of the defense witnesses who exonerated [defendant], and these expressions of personal belief were without proper foundation. We, therefore, rule that a district attorney, whether he be a witness or a prosecutor, may not make improper statements of this nature, which clearly prejudice the accused. To do so is to violate the rights of the accused, and the professional standards which this Court demands and which society deserves.

*Commonwealth v. Russell, supra,* 456 Pa. at 563–564, 322 A.2d at 129–130.

In the instant case, appellant had been charged with hindering apprehension or prosecution and criminal conspiracy to do the same. The District Attorney testified that in his opinion appellant's conduct in warning Michelle Kulick that her phone had been tapped and urging her to warn others of the wiretap had, in fact, hindered an on-going investigation. The District Attorney's expression of opinion was not, as the trial court's opinion suggests, an isolated comment that was unlikely to have an effect on the jury's

deliberations. Rather, the witness stated his opinion regarding the effect of appellant's conduct on no less than six occasions.[5] He did so without any cautionary instructions from the trial court to the jury that it should not consider the witness' opinion in determining appellant's guilt or innocence. This, in my judgment was erroneous and prejudicial. It was especially harmful in view of evidence that, even after appellant's warning, law enforcement officials were able to gather sufficient intercepted information to arrest and convict more than fifty persons for various drug offenses. Whether Hashem had committed a prohibited act with intent to hinder apprehension or prosecution was an

---

5. The District Attorney testified, inter alia, as follows:
 Q: Could you tell us what ... information you received [about appellant's warning], and what you did in respect to it?
 A: ... And my initial—my initial feeling was that ...

 that placed in jeopardy the entire operation.

 Q: Go ahead.
 A: By telling the—Michelle— ... that, in my view ... placed in jeopardy this entire operation that we had done.
 N.T. at 141–142.
 Q: My question, Mr. Preate, is, what was the information you received ... and what effect did it have on this investigation.

 A: ... we had to do certain things. And we felt that now the wire was in jeopardy.
 N.T. at 143–144.
 Q: Once the call came in, you were leading the investigation, what did you do; what action did you take.

 A: What happened after that was that we began to make an assessment of the operation to date. And we decided that we had to move quickly at that point, to gather whatever evidence we could, in the course of the investigation, to try to pull it all together, because it was now in jeopardy.
 N.T. at 145.
 Q: Would you explain how [the investigation] was changed?
 A: The whole investigation was now placed, as I indicated, in jeopardy....
 N.T. at 150.
 Q: Would you tell us specifically what [about the investigation] was changed?
 A: It was hindered.
 N.T. at 152.

issue for the jury; it did not call for an expression of opinion by the District Attorney. Therefore, even if the Commonwealth had not violated 18 Pa.C.S. § 5718, I would hold that appellant was entitled to a new trial.