422 A.2d 525

**COMMONWEALTH of Pennsylvania,**

v.

**James A. MILLER, Appellant.**

Superior Court of Pennsylvania.

Argued March 21, 1980.

Filed Oct. 10, 1980.

Carol K. McGinley, Assistant Public Defender, Allentown, for appellant.

James Knoll Gardner, Assistant District Attorney, Allentown, for Commonwealth, appellee.

Before CERCONE, President Judge, and CAVANAUGH, WICKERSHAM, WATKINS, MONTGOMERY and HOFFMAN, JJ.

CERCONE, President Judge:

This appeal arises following a jury trial, from James Miller's conviction for murder of the second degree, robbery, conspiracy and possession of instruments of a crime. Having been sentenced to life in prison for the murder and a concurrent ten to twenty year term for the robbery, Miller appealed to the Supreme Court, which transferred the appeal to this court for disposition. The panel which heard this appeal originally agreed with appellant's contention that the entire District Attorney's Office of Lehigh County should have been disqualified from prosecuting appellant, and granted him a new trial. Thereafter, due to the special importance of that decision, we granted the Commonwealth's petition for reconsideration. We now reverse the

order of the panel and reinstate the judgment of sentence. The relevant facts are as follows.

On January 6, 1975, William Platt was appointed Chief Public Defender of Lehigh County. It was in that capacity that James Miller's case first came to his attention, because Mr. Platt reviewed and approved the written applications of Miller and his co–defendant, Scott Frankenfield, for representation by the public defender. An assistant public defender was appointed to represent Miller, and Mr. Platt represented Frankenfield.[1] It should be emphasized, however, that Mr. Platt personally undertook no part in Miller's defense and received no confidential information concerning Miller from his staff, or from Miller, himself.

In December of 1976, after the District Attorney of Lehigh County had been stricken by a fatal heart attack, Mr. Platt was appointed District Attorney, and thereupon arose the problem that has touched this case. Immediately upon assuming his new post, Mr. Platt informed the members of his staff in the district attorney's office that he wished to take no part in cases involving representation by the public defender's office which had arisen during his tenure as chief public defender. Unsatisfied that this action was sufficient, on December 27, 1976, the assistant public defender representing Miller filed a petition to disqualify the entire staff of the district attorney's office from participation in the Miller trial. Following a hearing, the court ordered Mr. Platt to take no part in the Miller case in any manner whatever, but refused to disqualify the assistant district attorney in charge of the case, James Knoll Gardner, or other members of the staff from participating. As stated above, Miller was subsequently convicted.

■ From the outset of this discussion, it must be borne in mind that the parties agree Mr. Platt faithfully abided by his self–imposed recusal, as well as the court's order, and has neither interceded in, nor imparted any information to his staff concerning this case. However, Miller contends the

1. In July of 1976 a jury found Frankenfield guilty of the same principal crimes for which Miller was convicted.

continued prosecution of this case by members of Mr. Platt's staff creates the "appearance of impropriety" within the meaning of Disciplinary Rule 9–101 of the Code of Professional Responsibility,[2] and that the staff should be disqualified for the same reasons which disqualified Mr. Platt. In the language of Disciplinary Rule 5–105(D):

> If a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, no partner, associate or any other lawyer affiliated with him or his firm may accept or continue such employment.[3]

The particular question raised in this case is novel in the appellate courts of Pennsylvania, and, for Miller to prevail, we would be required to extend the case law which has referred to these and like ethical principles in other contexts.

Of course, that lawyers and judges should avoid even the appearance of impropriety is a requirement that has been recited often in appellate decisions of this Commonwealth; but, those cases are so readily distinguishable from the case at hand that they shed little light on the issue with which we are confronted. See, e. g., *Commonwealth v. Perry*, 468 Pa. 515, 364 A.2d 312 (1976) (trial judge personal friend of murder victim; recusal not required); *Commonwealth v. Pavkovich*, 444 Pa. 530, 283 A.2d 295 (1971) (judge formerly defendant's prosecutor; recusal required); *Commonwealth ex rel. Allen v. Rundle*, 410 Pa. 599, 189 A.2d 261 (1963) (same): *Commonwealth ex rel. Whitling v. Russel*, 406 Pa. 45, 176 A.2d 641 (1962) (same counsel for co–defendants with antagonistic defenses; disqualification required); *Common-*

---

**2.** This disciplinary rule applies to prosecutors as well as to private practitioners generally. See ABA Standards for Criminal Justice, Standards Relating to the Prosecution Function § 1.2 (Approved Draft, 1971).

**3.** It would be entirely too facile to dispose of this case on this basis, but it bears nothing that the semantics of DR 5–105(D) indicate an intention to speak to the private sector, so–called, rather than to publicly employed attorneys. For example, in no real sense did Mr. Platt "withdraw from employment" by disqualifying himself, nor can it be said that Mr. Gardner, the assistant district attorney, is a member of Mr. Platt's "firm." Cf. *American Dredging Co. v. City of Philadelphia*, 480 Pa. 177, 389 A.2d 568 (1978).

*wealth v. Dunlap*, 233 Pa.Super. 38, 335 A.2d 364 (1975) (prosecutor represented victim in tort claim; disqualification not required). Our appellate decisions that have extended disqualification to members of the same "firm" are fewer and no more helpful. For example, a court may not infer waiver of an ineffective assistance of counsel claim, when the attorney who should have raised that claim was a member of the same firm as the allegedly ineffective attorney. *Commonwealth v. Via*, 455 Pa. 373, 316 A.2d 895 (1974). This rule was extended to members of the public defender's office in *Commonwealth v. Kaufmann*, 258 Pa.Super. 183, 392 A.2d 745 (1978). And, when representation of co–defendants by the same law office poses the potential for harm to one of the defendants, as when their defenses are antagonistic, disqualification is required. *Commonwealth v. Albertson*, 269 Pa.Super. 505, 410 A.2d 815 (1980).

In point of fact, the only Pennsylvania case which was factually enough similar as to be authoritative was decided contrary to Miller's position in this case. In *Commonwealth v. Grucella*, 58 Luz.L.R. 137 (1968), *aff'd* 214 Pa.Super. 716, 249 A.2d 821 (1969), a former public defender who had actually represented the defendant at his arraignment joined the district attorney's staff prior to trial. As in this case, that attorney took no part in the trial of the defendant, and imparted no information concerning the case to the district attorney, who, in fact, tried it. The trial court concluded that there had been neither actual harm to the defendant nor the appearance of impropriety, and denied the defendant's motion for a new trial.

Our research and the excellent briefs of the interested parties,[4] reveal that *Grucella* comports with the weight of authority in other jurisdictions. Indeed, the cases which are most similar to the facts presented in this case have held in favor of the Commonwealth's position herein. In the following cases courts in other jurisdictions have found individual disqualification of prosecuting attorneys satisfactory, rather than disqualification of the entire staff, despite the fact that

4.  In addition to the representatives of the named parties, the District Attorney's Office of Philadelphia, and the Pennsylvania District At-

the prosecuting attorney had previously taken part in some aspect of the accused's defense. *People v. Shinkle,* 423 N.Y.S.2d 549, 73 A.D.2d 764 (1979);[5] *State v. Smith,* 123 Ariz. 231, 599 P.2d 187 (1979); *Pisa v. Commonwealth,* —— Mass. ——, 393 N.E.2d 386 (1979); *Mattress v. State,* 564 S.W.2d 678 (Tenn.Cr.App.1977); *State v. Bell,* 346 So.2d 1090 (La.1977); *Hannon v. State,* 48 Ala.App. 613, 266 So.2d 825 (Ala.1972); *Dunn v. State,* 264 So.2d 823 (Miss.1972); *Myers v. State,* 459 S.W.2d 859 (Tex.Cr.App.1970); *State v. Brazile,* 90 So.2d 789 (La.1956).

On the other hand, to be sure, there have been circumstances which courts have found sufficiently compelling to require disqualification of the entire prosecutor's office and the appointment of a special prosecutor. In *State v. Chambers,* 86 N.M. 383, 524 P.2d 999 (N.M.1974), *cert. denied,* 86 N.M. 372, 524 P.2d 988 (1974), the defendant's former attorney at his first trial subsequently became a member of the district attorney's office. Because of his complete familiarity with the defendant's case, and his obviously having received confidential information from the defendant, the court felt it necessary to recuse the entire district attorney's office to avoid the appearance of impropriety. Similarly, in Arizona, the court required disqualification of the entire prosecutor's office when it hired the accused's former co–counsel. *State v. Latigue,* 108 Ariz. 521, 502 P.2d 1340 (1972). But, even the Arizona courts do not require the recusal of the entire prosecutor's office simply because it hired a person who had been with the public defender's office when the public defender undertook representation of the defendant. *State v. Lozano,* 121 Ariz. 99, 588 P.2d 841 (1978). Thus, the only cases which have required disqualification of the entire prosecutorial staff have involved situations where a prosecutor, and usually one with administra-

torney's Association filed briefs amicus curiae. All are to be commended for the thoroughness and clarity of their briefs.

**5.** Additional such New York cases include *People v. DeFreese,* 71 A.D.2d 689, 418 N.Y.S.2d 959 (1979); *People v. Cruz,* 60 A.D.2d 872, 401 N.Y.S.2d 267 (1968); *Fox v. Shapiro,* 84 Misc.2d 223, 375 N.Y. S.2d 945 (1975).

tive control over all cases, has formerly represented the particular defendant seeking recusal due to the appearance of the potential for a breach of confidence.[6] That is simply not the circumstance of the case before us; Mr. Platt neither represented Miller nor received any communications from him which could possibly compromise his defense. See 27 C.J.S. *Dist. & Pros. Attys.* § 12(6)(c) (1959).

There is, of course, a logical basis as well as compelling practical reasons for distinguishing the practice of private law firms and the public defender's office from that of the district attorney's office. In discussing the applicability of DR 5–105 to government agencies, the American Bar Association has written:

When the Disciplinary Rules of Canons 4 and 5 mandate the disqualification of a government lawyer who has come from private practice, his governmental department or division cannot practicably be rendered incapable of handling even the specific matter. Clearly, if DR 5–105[D] were so construed, the government's ability to function would be unreasonably impaired. Necessity dictates that government action not be hampered by such a construction of DR 5–105[D]. The relationships among lawyers within a government agency are different from those among partners and associates of a law firm. The salaried government employee does not have the financial interest in the success of departmental representation that is inherent in private practice. This important difference in the adversary posture of the government lawyer is recognized by Canon 7: the duty of the public prosecutor to seek justice, not merely to convict, and the duty of all government lawyers to seek just results rather than the result desired by a client. The channeling of advocacy toward a just result as opposed to vindication of a particular claim lessens the temptation to circumvent the disciplinary rules through the action of associates. Accordingly, we construe DR 5–105[D] to be inapplicable to other government lawyers associated with a particular govern-

6. Additional cases are collected and discussed in Annotation, 31 A.L.R.3d 953 (1970).

ment lawyer who is himself disqualified by reason of DR 4–101, DR 5–105, DR 9–101[B], or similar Disciplinary Rules.[7]

■ Thus, it has been noted that the principle of disqualification which applies to private law firms is simply not so strong when applied to government agencies in general. See G. Hazard, Ethics in the Practice of Law 107–119 (1978); Liebman, The Changing Law of Disqualification: The Role of Presumption and Policy, 73 N.W.L.Rev. 996, 1019–1020 (1979). The principle should be all the more narrowly construed when applied to the office of district attorney, because the district attorney is not an advocate in the ordinary sense of the term; his duty is to seek justice, to protect the innocent as well as to convict the guilty. 23A C.J.S. *Criminal Law* § 1081a, at pp. 79, 81 (1961). Furthermore, we simply cannot ignore the devastating impact that disqualifying the entire district attorney's office would have if we were to apply DR 5–105 to situations where a district attorney, or a member of his staff, had been a member of the public defender's office when a particular case arose. For a variety of reasons it is common in Pennsylvania for public defenders to accept subsequent employment in the district attorney's office, if not as did Mr. Platt, become the district attorney himself. The practice is so common, in fact, that in large counties such as Philadelphia and Allegheny the rule of disqualification which appellant seeks in this case could cause special prosecutors to become the rule rather than the exception. The cost to the taxpayers would be enormous.

■ Instead of opting for such an extravagantly indulgent application of the "appearance of impropriety" standard, we prefer to rely upon the integrity of the district attorneys of this Commonwealth not to participate in the prosecution of cases when such participation would generate an appearance of impropriety. In sum, we agree with the Supreme Court of Massachusetts when it stated in *Pisa v. Commonwealth*, 393 N.E.2d at 389:

7. ABA, Committee on Ethics & Professional Responsibility, Formal Opinion # 342 (1975).

Many lawyers who work for the government come from private practice; the government's ability to function would be impaired if disqualification of one lawyer automatically resulted in disqualification of his agency. Where a lawyer who has represented a criminal defendant joins a prosecutor's office, disqualification of the entire office is not necessarily appropriate. That lawyer is of course disqualified from participating in the case on behalf of the prosecution. *But individual rather than vicarious disqualification is the general rule.* (Citations omitted). (Emphasis added).

Consequently, we find that the trial court correctly refused to disqualify the entire office of the District Attorney of Lehigh County, and that the panel of this court erred in ruling to the contrary.

The order of the panel is reversed, and the judgment of sentence is reinstated and affirmed.