464 So.2d 1185 (1985)
STATE of Florida, Petitioner,
v.
Larry E. FITZPATRICK, Respondent.
No. 63752.
Supreme Court of Florida.
February 28, 1985.
Jim Smith, Atty. Gen. and Richard W. Prospect, Asst. Atty. Gen., Daytona Beach, for petitioner.
Dan R. Warren of Judge & Warren, Daytona Beach, for respondent.
OVERTON, Justice.
This is a petition to review a decision reported as Fitzpatrick v. Smith, 432 So.2d 89 (Fla. 5th DCA 1983), in which the Fifth District Court of Appeal required the disqualification of the entire state attorney's office for the Seventh Judicial Circuit from prosecuting Fitzpatrick on the ground that confidential communications relating to the charges against him had been made by him to an attorney who was subsequently hired as an assistant state attorney in that office. The district court's decision affects a class of constitutional officers and we have jurisdiction. Art. V, § 3(b)(3), Fla. Const. For the reasons expressed, we quash the decision of the district court.
Fitzpatrick was arrested on two counts of sale of a controlled substance and conspiracy to traffic in cocaine. While in jail, Fitzpatrick discussed his case with an attorney who was married to Fitzpatrick's ex-wife, but did not employ the attorney to represent him in the matter. The attorney was subsequently hired as an assistant state attorney, after which Fitzpatrick moved to disqualify the entire state attorney's office from prosecuting the case against him under the conflict of interest provisions of the Code of Professional Responsibility.
The trial court held a disqualification hearing and found that the conversations between the attorney and Fitzpatrick were confidential communications of the nature contemplated by Ethical Consideration *1186 4-1[1] and Disciplinary Rule 4-101[2] of the Code of Professional Responsibility. These provisions generally prohibit a lawyer from revealing or using, to a client's disadvantage, the confidences or secrets of a client. The trial court expressly found that the attorney was not involved in the prosecution of the respondent and had not revealed any confidential information to other assistant state attorneys, and refused to disqualify the office, holding that the state attorney's office is not a law firm within the meaning of Disciplinary Rule 5-105(D). That rule provides: "If a lawyer is required to decline employment or to withdraw from employment under DR 5-105, no partner or associate of his or his firm may accept or continue such employment." The district court reversed, holding that the state attorney's office constitutes a law firm within the meaning of Canon 5. The district court analogized state attorney's offices to public defender's offices, which have been held by two district courts of appeal to be law firms under Canon 5. See Roberts v. State, 345 So.2d 837 (Fla. 3d DCA 1977); Turner v. State, 340 So.2d 132 (Fla. 2d DCA 1976). The district court acknowledged this Court's decision in Babb v. Edwards, 412 So.2d 859 (Fla. 1982), in which we held that the language of section 27.53(3), Florida Statutes (Supp. 1980),
clearly and unambiguously requires the trial court to appoint other counsel not affiliated with the public defender's office upon certification by the public defender that adverse defendants cannot be represented by him or his staff without conflict of interest. The statute ... does not permit the appointment of other counsel affiliated with the public defender's office once conflict is certified.
Id. at 862. The district court in the instant case concluded there is no rational distinction between the offices of the state attorney and public defender and "each is a single `firm' for the purposes of Canon 5 of the Code." 432 So.2d at 91.
The state contends that the state attorney's office is not a law firm for purposes of Canon 5, and that disqualification should not extend to the entire office unless the disqualified attorney has acted directly against the former client or provided information or assistance to the attorneys who would prosecute the former client. Fitzpatrick, on the other hand, asserts that even in situations where there is no actual conflict, the existence of the potential for conflict mandates the disqualification of the entire state attorney's office. There is no issue concerning the disqualification of the individual assistant state attorney who received the confidential communications. He is properly disqualified under Canon 4. The question to be decided concerns the disqualification of an entire prosecutorial office. Babb is not controlling or applicable to this cause because that case was decided solely upon an interpretation of a statute which applies only to public defenders' offices, and not upon a determination that the public defender's office is a law firm within the meaning of Canon 5.
*1187 We fully adhere to the view that state attorneys must abide by the same high standards of fidelity imposed by the Code of Professional Responsibility on private practitioners. We find, however, that the Code of Professional Responsibility was intended to recognize a distinction between private law firms and government prosecutorial offices. In so holding, we are in accord with the majority of jurisdictions. See, e.g., People v. Lopez, 155 Cal. App.3d 813, 202 Cal. Rptr. 333 (1984); State v. Laughlin, 232 Kan. 110, 652 P.2d 690 (1982); Pisa v. Commonwealth, 378 Mass. 724, 393 N.E.2d 386 (1979); Commonwealth v. Miller, 281 Pa.Super. 392, 422 A.2d 525 (1980). But see Collier v. Legakes, 98 Nev. 307, 646 P.2d 1219 (1982).
By requiring disqualification of all members of a law firm under Disciplinary Rule 5-105(D), the authors of the Code sought to prevent disqualified attorneys from circumventing the disciplinary rules by acting through their associates. In Formal Opinion 342, the American Bar Association indicated it did not intend for the imputed disqualification rule to encompass government law offices, and explained the rationale for distinguishing between those offices and private law firms with respect to the application of this disciplinary rule:
When the disciplinary rules of Canons 4 and 5 mandate the disqualification of a government lawyer who has come from private practice, his governmental department or division cannot practicably be rendered incapable of handling even the specific matter. Clearly, if D.R. 5-105(D) were so construed, the government's ability to function would be unreasonably impaired. Necessity dictates that government action not be hampered by such a construction of D.R. 5-105(D). The relationships among lawyers within a government agency are different from those among partners and associates of a law firm. The salaried government employee does not have the financial interest in the success of departmental representation that is inherent in private practice. This important difference in the adversary posture of the government lawyer is recognized by Canon 7: the duty of the public prosecutor to seek justice, not merely to convict, and the duty of all government lawyers to seek just results rather than the result desired by a client. The channeling of advocacy toward a just result as opposed to vindication of a particular claim lessens the temptation to circumvent the disciplinary rules through the action of associates. Accordingly, we construe D.R. 5-105(D) to be inapplicable to other government lawyers associated with a particular government lawyer who is himself disqualified by reason of D.R. 4-101, D.R. 5-105, D.R. 9-101(B), or similar disciplinary rules. Although vicarious disqualification of a government department is not necessary or wise, the individual lawyer should be screened from any direct or indirect participation in the matter, and discussion with his colleagues concerning the relevant transaction or set of transactions is prohibited by those rules.
62 A.B.A.J. 517, 522 (1976) (emphasis added).
We also note that the Model Rules of Professional Conduct,[3] which are currently under consideration by this Court[4] and the adopting authorities of at least forty other states, expressly distinguish between government and non-government lawyers for purposes of imputed disqualification. Model Rule 4-1.11(c), which specifically governs the conduct of attorneys who *1188 move from private practice into government employment, provides that a lawyer serving as a public employee shall not "participate in a matter in which the lawyer participated personally and substantially while in private practice or nongovernmental employment." The commentary states that the rule "does not disqualify other lawyers in the agency with which the lawyer in question has become associated."
Further, this Court considered the due process ramifications of a directly related issue in Thompson v. State, 246 So.2d 760 (Fla. 1971), in which we held that
the State Attorney can only be disqualified if it were shown that as Public Defender he had actually gained confidential information from a prior attorney-client relationship with the defendant, which information would be usable in the new matter to defendant's prejudice.
Id. at 763 (quoting State v. Bryan, 227 So.2d 221, 223 (Fla. 2d DCA 1969)). The Court continued:
The twofold prohibition enunciated in Bryan  that a former defender turned prosecutor can neither act directly against his former client in a related matter, nor provide information or assistance for those who would so act  provides a logical answer to the abstract question. The standard for a prosecutor should also be the standard for his staff, and we so hold. Therefore, we find that employment of a former defender on the prosecution staff does not violate due process save where the two provisions set out above are violated.
246 So.2d at 763.
In the instant case, the trial court found that confidential communications transpired between the attorney and Fitzpatrick, and it is undisputed that these communications related to the criminal case that is currently being prosecuted. We find, however, that imputed disqualification of the entire state attorney's office is unnecessary when the record establishes that the disqualified attorney has neither provided prejudicial information relating to the pending criminal charge nor has personally assisted, in any capacity, in the prosecution of the charge. Further, we expressly approve the construction of Canon 5 contained in the American Bar Association's Formal Opinion 342.
For the reasons expressed, we quash the decision of the district court and remand with directions to reinstate the judgment of the trial court.
It is so ordered.
BOYD, C.J., and ADKINS, ALDERMAN and McDONALD, JJ., concur.
EHRLICH, J., dissents with an opinion, in which SHAW, J., concurs.
EHRLICH, Justice, dissenting.
I would approve the decision of the district court of appeal. I believe the majority misses the philosophical point of Canon 4 and that the result of the decision here will be to further erode public confidence in our justice system.
All attorneys, public and private, are bound by Canon 9 to "avoid even the appearance of professional impropriety." As Ethical Consideration 9-1 states: "Continuation of the American concept that we are to be governed by rules of law requires that the people have faith that justice can be obtained through our legal system. A lawyer should promote public confidence in our system and in the legal profession." Although we are convinced that in this case no actual breach of client confidentiality has occurred or would have occurred, we are not the forum in need of convincing. To the public at large, the potential for betrayal in itself creates the appearance of evil, which in turn calls into question the integrity of the entire judicial system. When defendants no longer have absolute faith that all confidential communication with counsel will remain forever inviolate, no candid communication will transpire, and the guarantee of effective assistance of counsel will become meaningless. This is too high a cost for society to bear.
*1189 On the other hand, the cost of disqualification of the state attorney is relatively minimal. Section 27.14, Florida Statutes (1981), provides for assignment of a state attorney from one circuit to another where the state attorney has been disqualified. This process is frequently used and is entirely appropriate here.
Both parties concede that Kimball would be required to disqualify himself from any prosecution of Fitzpatrick. The state argues that only Kimball should be disqualified unless Fitzpatrick can demonstrate the actual betrayal of his confidences. The majority quotes Thompson v. State, 246 So.2d 760 (Fla. 1971), in which this Court embraced a standard test for disqualification. Unfortunately, Thompson's rephrasing of the Bryan test subtly shifts the focus from whether the confidential information gained in the prior relationship is usable against the defendant to whether that information is actually used against him. The effect is to shift to the defendant the burden of proving a resulting prejudice. In spite of the state's repeated assurance at oral argument that the state would bear the burden of proving non-use of the confidential information, I agree with the district court's analysis of the situation.
Where there is a claim that confidential conversations within the scope of the attorney-client privilege were had with an attorney who subsequently became employed by the state attorney's office, the defendant cannot be expected to disclose the nature of these conversations in order to establish this "basic unfairness." To require the defendant to come forward with allegations or proof that the attorney has or will disclose such confidences necessarily requires disclosure of much of the privileged information. This would destroy the very confidentiality he seeks to protect. We think it is sufficient to show there were confidential communications and they related to matters now on trial. Whether the attorney would violate those confidences and reveal the substance of them to other members of the office is not a subject of inquiry.
432 So.2d at 90. To the extent it would require inquiry into "whether the attorney would violate those confidences," we should recede from Thompson. The trial court found that there were confidential communications. Indisputably, these related to matters now on trial. The state attorney was properly disqualified.
SHAW, J., concurs.
NOTES
[1] Ethical Consideration 4-1 provides:

Both the fiduciary relationship existing between lawyer and client and the proper functioning of the legal system require the preservation by the lawyer of confidences and secrets of one who has employed or sought to employ him. A client must feel free to discuss whatever he wishes with his lawyer and a lawyer must be equally free to obtain information beyond that volunteered by his client. A lawyer should be fully informed of all the facts of the matter he is handling in order for his client to obtain the full advantage of our legal system. It is for the lawyer in the exercise of his independent professional judgment to separate the relevant and important from the irrelevant and unimportant. The observance of the ethical obligation of a lawyer to hold inviolate the confidences and secrets of his client not only facilitates the full development of facts essential to proper representation of the client but also encourages laymen to seek early legal assistance.
[2] Disciplinary Rule 4-101(B) provides:

Except when permitted under DR 4-101(C) and (D), a lawyer shall not knowingly:
(1) Reveal a confidence or secret of his client.
(2) Use a confidence or secret of his client to the disadvantage of the client.
(3) Use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure.
[3] The Model Rules of Professional Conduct, which were adopted by the American Bar Association in August, 1983, were designed to replace the American Bar Association Code of Professional Conduct.
[4] The Florida Bar re: Code of Professional Responsibility, No. 65,877. In 1981, a special committee was appointed by The Florida Bar to study the Model Rules of Professional Conduct formulated by the American Bar Association. In July, 1984, The Florida Bar Board of Governors petitioned this Court to adopt a modified version of the American Bar Association Model Rules. This Court has not yet ruled on the matter.