538 So.2d 1356 (1989)
STATE of Florida, Petitioner,
v.
David Richard COTE, Respondent.
No. 88-1981.
District Court of Appeal of Florida, Fifth District.
February 23, 1989.
Robert A. Butterworth, Atty. Gen., Tallahassee and Kellie A. Nielan, Asst. Atty. Gen., Daytona Beach, for petitioner.
Jack A. Moring of Bradshaw, Mountjoy & Vitter, Inverness and Charles P. Horn, Crystal River, for respondent.
*1357 ORFINGER, Judge.
The State seeks certiorari review[1] of an order disqualifying the entire State Attorney's Office for the Fifth Judicial Circuit from prosecuting David Cote, who has been indicted for first-degree murder.
Cote's attorney had discussed the pending murder prosecution with Julian Harrison, who was then in private practice. Harrison subsequently accepted an offer of employment with the state attorney's office. Cote then filed a motion to disqualify the entire state attorney's office. Following an evidentiary hearing on the motion, the trial court specifically found that Harrison "has not revealed any of the knowledge of information he learned while acting as co-counsel for the defendant," but nevertheless ordered that the entire office be disqualified from further prosecuting Cote.
The stated reason for the entry of the order of disqualification was to avoid the appearance of impropriety. In State v. Fitzpatrick, 464 So.2d 1185 (Fla. 1985), the supreme court recognized a distinction between a state office and a private law firm within the meaning of the Code of Professional Responsibility, and held that an entire state attorney's office was not disqualified from prosecuting a defendant who had related confidential communications to an attorney who later became a member of that office, provided that the attorney had not related prejudicial information regarding the pending criminal charge nor personally assisted in the prosecution of that charge.
In 1985, the year that Fitzpatrick was issued, the ethical standards imposed on Florida attorneys were prescribed in the Code of Professional Responsibility, which was based on the former A.B.A.Code of Professional Conduct. Under the former code, an entire private law firm had to decline employment if one of the firm's attorneys, because of a conflict of interest, had to decline employment. The supreme court, though, quoted with approval the American Bar Association's Formal Opinion 342, which indicated that the imputed disqualification rule would not apply to government law offices, because if applied to a governmental department or division, it would unreasonably impair the government's ability to function.
The ethical standards imposed on Florida attorneys are presently prescribed in a modified version of the current A.B.A. Model Rules of Professional Conduct. These rules are found in Chapter 4 of the Rules Regulating the Florida Bar. The current Model Rules of Professional Conduct also make a distinction between private law firms and government law offices for purposes of imputed disqualification. Rule 4-1.11(c), which specifically governs the conduct of attorneys who move from private practice to government employment, prohibits a government lawyer from participating in a matter in which the lawyer participated personally and substantially while in private practice or nongovernmental employment. However, the comment, which is a guide to interpretation, states that this rule does not disqualify other lawyers in the government agency with which the lawyer in question has become associated.
A contrary result has been reached in cases involving a conflict of interest in a public defender's office, but upon other grounds. In Babb v. Edwards, 412 So.2d 859 (Fla. 1982), the supreme court held that assistant public defenders within the same circuit, regardless of the location of their offices, cannot be appointed to represent defendants with adverse interests once the public defender of that circuit has determined that conflict exists, and has moved the court to appoint other counsel. In State v. Fitzpatrick, supra, the supreme court stated that Babb was not controlling or applicable to the disqualification of a state attorney's office because that case was decided solely upon an interpretation *1358 of a statute[2] which applies only to public defenders, and not upon a determination that a public defender's office is a law firm under the Code of Professional Responsibility. See State v. Fitzpatrick, 464 So.2d at 1186.
So, too, in State v. Clausell, 474 So.2d 1189 (Fla. 1985) citing to Fitzpatrick, the supreme court held that there is no inherent right to disqualification of an entire state attorney's office in a prosecution for perjury when a member of the state attorney's office is called as a state witness, unless actual prejudice is shown. In Preston v. State, 528 So.2d 896 (Fla. 1988), a death row inmate filed a 3.850 motion days before his scheduled execution, and raised a conflict of interest claim. The defendant in that case had been represented on a misdemeanor charge by an attorney who subsequently became a member of the state attorney's office which prosecuted the defendant on the murder charge. Defendant's former attorney played no substantive role in the murder prosecution, and testified that he had not discussed any privileged communications or other matters relating to defendant with any members of the state attorney's office. Citing to State v. Fitzpatrick, the supreme court agreed that the appearance of the former attorney at a continuance hearing at the request of the attorney who was prosecuting the case was not the type of assistance in the prosecution which would justify disqualification of the entire state attorney's office. Respondent attempts to distinguish the instant case from Fitzpatrick, supra, by noting that this case is a first-degree murder prosecution while Fitzpatrick was a noncapital case. However, Preston was a capital case and the supreme court applied the same principles it had applied in Fitzpatrick.
Respondent further claims that the trial court has the inherent discretion to disqualify the state attorney's office if there is an appearance of impropriety. A similar argument was rejected by the supreme court in Fitzpatrick. In view of the court's finding that Harrison had not revealed anything he had learned through his contact with Cote's attorney, and was not in any way participating in the prosecution, and without a showing of prejudice to the defendant, the mere "appearance of impropriety" or "potential for conflict" is insufficient to require the disqualification of the entire state attorney's office. We grant the writ, quash the order disqualifying the state attorney's office from prosecuting this defendant, and upon the issuance of the mandate herein, vacate the previously ordered stay of proceedings.
Writ GRANTED; Order QUASHED; Stay VACATED.
COWART and DANIEL, JJ., concur.
NOTES
[1] See State v. Pettis, 520 So.2d 250 (Fla. 1988).
[2] Section 27.53(3), Florida Statutes (1987) states, in pertinent part:

(3) If at any time during the representation of two or more indigents the public defender shall determine that the interests of those accused are so adverse or hostile that they cannot all be counseled by the public defender or his staff without conflict of interest, or that none can be counseled by the public defender or his staff because of conflict of interest, it shall be his duty to move the court to appoint other counsel... .