597 So.2d 259 (1992)
Edward CASTRO, Appellant,
v.
STATE of Florida, Appellee.
No. 77102.
Supreme Court of Florida.
March 12, 1992.
Rehearing Denied May 26, 1992.
James B. Gibson, Public Defender and Larry B. Henderson, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen. and Barbara C. Davis, Asst. Atty. Gen., Daytona Beach, for appellee.
BARKETT, Justice.
Edward Castro appeals the imposition of the death penalty upon resentencing.[1] In 1988, Castro was found guilty of first-degree murder and robbery with a deadly weapon. Castro was sentenced to death on the first-degree murder conviction and to five and one-half years' imprisonment on the robbery conviction. On direct appeal, this Court affirmed the convictions but reversed the death sentence and remanded for a new penalty hearing because of faulty jury instructions and the erroneous presentation of irrelevant, presumptively prejudicial evidence of collateral crimes which rendered the jury recommendation unreliable. Castro v. State, 547 So.2d 111 (Fla. 1989).
At the new penalty phase, the jury recommended the death penalty by a vote of eight to four. The trial court found in aggravation that the murder was committed for pecuniary gain while the defendant was engaged in the commission of a robbery; the murder was cold, calculated, and premeditated without a pretense of moral or legal justification; and the murder was *260 especially heinous, atrocious, or cruel. In mitigation the court found "Castro suffered through poverty, neglect, abuse, sexual abuse, a dysfunctional family life, and social alienation as a child," as well as alcohol dependency and some emotional and mental disturbances. The court concluded that the aggravating circumstances outweighed the mitigating circumstances and imposed the death sentence.
Castro first argues that the trial court should have disqualified the Fifth Judicial Circuit State Attorney's Office from prosecuting his case. We find this issue dispositive. Anthony Tatti, Castro's public defender in the first trial, was subsequently hired by the state attorney's office to prosecute capital crimes. John Moore was the prosecutor in the first trial as well as in the new penalty phase. In prosecuting the new penalty phase, Moore called Tatti to discuss responses that the State could make to motions filed by Castro's current defense counsel. The trial court held a hearing on Castro's motion to disqualify, and Tatti testified that he and Moore had merely discussed legal authorities and that he had supplied the prosecutor with case citations that he had uncovered during the course of his research on another case while at the state attorney's office. The trial judge denied the motion to disqualify.
A lawyer's ethical obligations to former clients generally requires disqualification of the lawyer's entire law firm where any potential for conflict arises. See R. Regulating Fla. Bar 4-1.10. In State v. Fitzpatrick, 464 So.2d 1185 (1985), this Court recognized an exception to the imputed disqualification rule where the "law firm" is a governmental agency. Thus, the Court held
that imputed disqualification of the entire state attorney's office is unnecessary when the record establishes that the disqualified attorney has neither provided prejudicial information relating to the pending criminal charge nor has personally assisted, in any capacity, in the prosecution of the charge.

Id. at 1188 (emphasis added). In Fitzpatrick, the disqualified attorney had had no conversations or contact with other state-attorney personnel regarding the defendant's case. Under such circumstances, we held that the entire state attorney's office need not be disqualified. However, we cannot say the same result should follow where the defendant or the public at large is given reason to believe the judicial process has been compromised. Our judicial system is only effective when its integrity is above suspicion. Our system must not only refuse to tolerate impropriety, but even the appearance of impropriety as well. "An imagined advantage on one side or the other in a criminal proceeding can be as destructive of the integrity of the process as can a real advantage." Mackey v. State, 548 So.2d 904 (Fla. 1st DCA 1989). Justice Enrlich expounded upon this problem in Fitzpatrick when he stated:
All attorneys, public and private, are bound by Canon 9 [of the Code of Professional Responsibility] to "avoid even the appearance of professional impropriety." ... [Even where] no actual breach of client confidentiality has occurred or would have occurred, we are not the forum in need of convincing. To the public at large, the potential for betrayal in itself creates the appearance of evil, which in turn calls into question the integrity of the entire judicial system. When defendants no longer have absolute faith that all confidential communication with counsel will remain forever inviolate, no candid communication will transpire, and the guarantee of effective assistance of counsel will become meaningless. This is too high a cost for society to bear.
464 So.2d at 1188 (Ehrlich, J., dissenting).
Turning to the present case, we cannot say that the integrity of the judicial process has not been brought into question. Moore called Tatti, knowing that Tatti was Castro's former public defender, and discussed motions pending in Castro's case. Nonetheless, the State argues that disqualification should not be required absent the disclosure of confidential information or other affirmative showing of prejudice. *261 We do not agree and again note the specific rule established by Fitzpatrick prohibiting the disqualified attorney from either "provid[ing] prejudicial information relating to the pending criminal charge [or] ... personally assist[ing], in any capacity, in the prosecution of the charge." 464 So.2d at 1188 (emphasis added). Where this rule is violated, disqualification of the entire state attorney's office is appropriate.[2] Clearly in this case, Tatti "personally assisted in [some] capacity." Accordingly, we find the trial court erred in refusing to disqualify the Fifth Judicial Circuit State Attorney's Office from prosecuting Castro's case, and Castro is thus entitled to a new penalty hearing.
Although we have resolved Castro's case on the first issue, we address Castro's second point in order to clarify the holding in Suarez v. State, 481 So.2d 1201 (Fla. 1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2908, 90 L.Ed.2d 994 (1986). Castro argues that his death sentence is unconstitutional because the jury was permitted to consider duplicative aggravating circumstances, to wit, that the murder was committed for pecuniary gain and that murder occurred during the commission of a robbery. We have previously held that a trial court's finding of both of these circumstances constitutes improper doubling. E.g., Provence v. State, 337 So.2d 783 (Fla. 1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977); White v. State, 403 So.2d 331 (Fla. 1981), cert. denied, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983). In Suarez, however, we found that it was not reversible error when the jury was instructed on both factors as long as the trial court did not give the factors double weight in its sentencing order. 481 So.2d at 1209.
In the present case, defense counsel objected to the jury's being instructed on both factors and also requested the following special instruction be given:
The state may not rely upon a single aspect of the offense to establish more than a single aggravating circumstance. Therefore, if you find that two or more of the aggravating circumstances are supported by a single aspect of the offense, you may only consider that as supporting a single aggravating circumstance. For example, the commission of a capital felony during the course of a robbery and done for pecuniary gain relates to the same aspect of the offense and may be considered as being only a single aggravating circumstance.
The court refused the instruction on the authority of Suarez. However, Suarez did not involve a limiting instruction, but only the question of whether in that case it was reversible error when the jury was instructed on both aggravating factors. When applicable, the jury may be instructed on "doubled" aggravating circumstances since it may find one but not the other to exist. A limiting instruction properly advises the jury that should it find both aggravating factors present, it must consider the two factors as one, and thus the instruction should have been given.
Finally, Castro asserts that the trial court erred in refusing to grant him an additional peremptory challenge or to strike for cause a juror who indicated that the defendant would have the burden of proving the death sentence was inappropriate. While we need not pass upon the merits of this claim, we caution trial judges to scrutinize with care assertions that jurors cannot be fair. It is much easier to grant additional peremptory challenges when necessary than it is to retry a capital case.
Accordingly, we vacate the sentence of death and remand for a new penalty phase and resentencing in accordance with the views expressed herein.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, KOGAN and HARDING, JJ., concur.
GRIMES, J., dissents with an opinion.
*262 GRIMES, Judge, dissenting.
While probably not done intentionally, I agree that Moore and Tatti violated the rule established by this Court in State v. Fitzpatrick, 464 So.2d 1185 (Fla. 1985). However, there was no discussion of privileged communications, and there is no reasonable possibility that their conversation resulted in prejudice to Castro. Hence, I would dispose of the issue under the principle of harmless error. See Preston v. State, 528 So.2d 896 (Fla. 1988), cert. denied, 489 U.S. 1072, 109 S.Ct. 1356, 103 L.Ed.2d 824 (1989).
NOTES
[1] We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution.
[2] We caution, as we did in Reaves v. State, 574 So.2d 105 (Fla. 1991), that any prosecutor who is disqualified from participating in a former client's pending prosecution should be properly screened from other state-attorney personnel connected with the matter.