744 So.2d 986 (1999)
Edward CASTRO, Appellant,
v.
STATE of Florida, Appellee.
No. 91,216.
Supreme Court of Florida.
September 2, 1999.
Rehearing Denied October 20, 1999.
Gregory C. Smith, Capital Collateral Counsel, and Sylvia W. Smith, Heidi E. Brewer and John M. Jackson, Assistant CCRC-Northern Region, Tallahassee, Florida, for Appellant.
Edward Castro, Raiford, Florida, pro se.
Robert A. Butterworth, Attorney General, and Kenneth S. Nunnelley, Assistant Attorney General, Daytona Beach, Florida, for Appellee.
PER CURIAM.
The office of the Capital Collateral Regional Counsel-Northern Region (CCRC) files this appeal of the trial court's order discharging CCRC and dismissing Castro's Florida Rule of Criminal Procedure 3.850 postconviction motion. We have jurisdiction pursuant to article V, sections 3(b)(1) and (7), of the Florida Constitution. For the reasons expressed, we affirm the order of the trial court.
In 1988 Castro was found guilty of first-degree murder and sentenced to death for the strangling and stabbing of an Ocala man. On appeal, this Court upheld Castro's conviction but remanded for a new penalty hearing because of faulty jury instructions and the erroneous presentation of evidence concerning collateral crimes. See Castro v. State, 547 So.2d 111 (Fla. 1989). On remand, Castro was sentenced to death, but this Court remanded for a new penalty phase proceeding because the trial court erred in refusing to disqualify the Fifth Circuit State Attorney's Office from prosecuting the case. See Castro v. State, 597 So.2d 259 (Fla.1992). On the second remand, Castro was again sentenced to death and this Court upheld that sentence on appeal. See Castro v. State, 644 So.2d 987 (Fla.1994).
The sole issue in this case is whether the circuit court erred in granting Castro's requests to discharge CCRC and dismiss his postconviction motion. On numerous occasions since 1994, Castro has maintained that he wishes to waive his right to representation through CCRC and to waive his right to file postconviction motions in this case.
*987 On April 8, 1996, the State filed in this Court a motion for a hearing on Castro's request to waive representation. Following the response filed by CCRC, this Court transferred the State's motion to the circuit court. On July 2, 1996, the circuit court held a hearing on the State's motion for a waiver hearing. Castro told the circuit court that he wished to waive CCRC's representation. However, CCRC pointed out that under Durocher v. Singletary, 623 So.2d 482 (Fla.1993), only competent defendants can waive counsel. CCRC proffered the testimony of Dr. Jethro Toomer, who testified that Castro was not competent to waive counsel. Based on this testimony, the circuit court found that CCRC had called Castro's competence into question. The circuit court determined that a competency hearing should be held and ruled that an expert for the court and an expert for the State would each have an opportunity to examine Castro and testify regarding his competence.
On October 4, 1996, the date the competency hearing was to occur, Castro informed the circuit court that he wanted to proceed with his postconviction proceedings and continue to be represented by CCRC. The State suggested that despite Castro's change of heart, it would be wise to conduct the competency hearing while all of the doctors were present, just in case Castro attempted to discharge counsel at some point in the future. CCRC objected, but the circuit court agreed that due to the potential for future delay, it was best to hold the competency hearing.
During the competency hearing, Dr. Harry Krop and Dr. Harry McClaren both testified that Castro was competent. The circuit court subsequently entered an order finding that Castro was competent. Soon after, CCRC filed a motion to disqualify the circuit court judge. On November 21, 1996, the motion to disqualify was granted and on December 2, 1996, the case was reassigned to a different circuit court judge.
Around this time, Castro informed the State that he no longer wished CCRC to represent him. Pursuant to Castro's letters, the State filed a motion to dismiss. On June 24, 1997, the new circuit court judge held a hearing on the State's motion to dismiss. The circuit court judge spoke at length, on the record, with Castro concerning his desire to waive CCRC's representation and his desire to withdraw his postconviction motion:
THE COURT: You've asked this Court to conduct your own affairs?
THE DEFENDANT: Yes, sir.
THE COURT: You've asked this Court to allow you to represent yourself hereafter. You've done that repeatedly in writing and you've asked me here today.
THE DEFENDANT: Correct.
THE COURT: Sir, you are aware of the danger of self-representation, aren't you?
THE DEFENDANT: I am.
THE COURT: In fact, you alluded to that earlier when you said in your younger years when you didn't know the law and you trusted in Ms. Jenkins to-you thought you had to do some things.
THE DEFENDANT: Correct.
THE COURT: But you've since had an opportunity to spend countless hours in courtrooms. What makes you believe that you can endure the dangers that face you at this point? You understand that if I grant your request-
THE DEFENDANT: Yes, sir.
THE COURT: -you will go it alone?
THE DEFENDANT: Yes, sir. Could you be more specific with that? Are we speaking of-
THE COURT: I'm talking about any further proceedings that occur in court. Let's assume Capital Collateral-
THE DEFENDANT: Any proceedings or the finality of the entire situation? Is that your question, pertaining to legal?

*988 THE COURT: Pertaining only to legal matters before the Court, sir. I mean if, in fact, the end result of all of this is that the death sentence is carried out-
THE DEFENDANT: If I am capable, is that-
THE COURT: -you will, in fact, go that alone. There's no doubt about that, because they're not going with you, at least not voluntarily.
THE DEFENDANT: Well, from my understanding, from my understanding, if [CCRC] is removed from my case and I am allowed to represent myself, I can then decide whether I wish to proceed or not.
THE COURT: That's correct, sir.
THE DEFENDANT: Correct. So I understand that-
THE COURT: So my question to you is do you understand then-in that context, and you've correctly identified the context. In that context, do you understand, sir, that you are not skilled or trained in the mitutia [sic] of the law that you have witnessed in this microcosm today?
THE DEFENDANT: I do.
. . . .
THE COURT: All right, sir. Well, I guess really the more specific point is you would not have that ability to tap into their resources, as you've just articulated those resources and their zeal and their drive, to engage in that type of thing. It would be you. You would be your own law firm.
THE DEFENDANT: I do not desire their help.
THE COURT: But you understand-
THE DEFENDANT: I do not desire their expertise and-
THE COURT: I understand.
THE DEFENDANT: And I understand what I'm giving up, what I'm passing up, yes.
. . . .
THE COURT: Mr. Castro, you don't need to make any decisions today. Do you want to make decisions today?
THE DEFENDANT: I made the decision a long time ago, Your Honor, and I think it can be found in my letters, that all motions filed by [CCRC] be dismissed, be withdrawn.
THE COURT: All right. You wish-
THE DEFENDANT: They include 3.850 and include Chapter 119.
THE COURT: At this time, sir, then you move the Court for leave to withdraw your motions for post-conviction relief?
THE DEFENDANT: Yes, sir, I do.
THE COURT: And for the relief that could be accorded you under the public records laws?
THE DEFENDANT: Yes, sir, I do[.]
THE COURT: Does the State have any objection to proceeding on the pro se ore tenus motion at this proceedings [sic]?
MR. DALY: No, Your Honor, I don't. I simply ask the Court to ask Mr. Castro to recognize that in dismissing his motion, the motion will be withdrawn with prejudice, and that he will not be afforded the opportunity under the rules to file another motion for post-conviction relief.
I think he understands that, but, obviously, the Court would need to make him aware of that for purposes of his withdrawal, I think.
THE DEFENDANT: I understand that, Your Honor.
. . . .
THE COURT: Sir, you realize-to sum all this up, you realize that what you are doing here today follows a verdict of guilt, a sentence of death; and the likelihood that that sentence will be fulfilled, will be carried out, and that the barriers that you remove from that order being carried out are being wheeled out of the way right here in this room of your own free and voluntary act?

*989 THE DEFENDANT: Yes, sir.
THE COURT: Now, you understand that this is not a time for wishful thinking. This is not a time to think: "Well, I've withdrawn-I've asked the Judge to let me withdraw my 3.850 motion and I understand that he's going to do that and it will be with prejudice and he's telling me, well, golly, I can't ever raise it again, but I'll still be able to in another way."
That's not true. You won't be able to. It will be done.
THE DEFENDANT: No, honestly, Your Honor. In all honesty, the minute I walk out of here, I won't even be thinking of this. I know my position. I've accepted it.
After considering this testimony and arguments from counsel, the circuit court found that CCRC failed to present any new evidence that would call into question the previous judge's order finding Castro competent. The circuit court ordered that CCRC be discharged and permitted Castro to withdraw his postconviction motion. This appeal follows.
In Durocher v. Singletary, 623 So.2d 482, 483 (Fla.1993), this Court stated that "[c]ompetent defendants have the constitutional right to refuse professional counsel and to represent themselves, or not, if they so choose." This Court also said that "the state has an obligation to assure that the waiver of collateral counsel is knowing, intelligent, and voluntary." Id. at 485. The Court directed the trial court to conduct a Faretta-type[1] hearing to ensure that this obligation was fulfilled.
In the present case, all of the requirements of Durocher have been met. On July 2, 1996, Castro told the circuit court on the record that he did not wish for CCRC to represent him. When CCRC called Castro's competence into question (through the testimony of Dr. Toomer), the circuit court ordered a competency hearing. At this hearing, two doctors testified that Castro was competent. In Hunter v. State, 660 So.2d 244, 247 (Fla.1995), this Court stated:
The test for whether a defendant is competent to stand trial is whether "he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understandingand whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); see also § 916.12(1), Fla. Stat. (1993); Fla. R.Crim. P. 3.211(a)(1). The reports of experts are "merely advisory to the [trial court], which itself retains the responsibility of the decision." Muhammad v. State, 494 So.2d 969, 973 (Fla.1986) (quoting Brown v. State, 245 So.2d 68, 70 (Fla.1971), vacated in part on other grounds, 408 U.S. 938, 92 S.Ct. 2870, 33 L.Ed.2d 759 (1972)), cert. denied, 479 U.S. 1101[, 107 S.Ct. 1332] (1987). And, even when the experts' reports conflict, it is the function of the trial court to resolve such factual disputes. Fowler v. State, 255 So.2d 513, 514 (Fla.1971). The trial court must consider all evidence relative to competence and its decision will stand absent a showing of abuse of discretion. Carter v. State, 576 So.2d 1291, 1292 (Fla.1989), cert. denied, 502 U.S. 879, 112 S.Ct. 225, 116 L.Ed.2d 182 (1991).
In the present case, although there was conflicting testimony regarding Castro's competency, it was the function of the circuit court to resolve this dispute. See Hunter, 660 So.2d at 248. After considering all of the testimony, the circuit court concluded that Castro was competent. There has been no showing that the circuit court abused its discretion in coming to this conclusion.
On June 24, 1997, Castro again asserted his desire to waive CCRC's representation. The circuit court conducted a Faretta inquiry and determined that Castro was aware of the rights he was waiving. After *990 considering all of the arguments and the previously entered competency order, and pursuant to an extensive conversation with Castro, the circuit court ordered that CCRC be discharged and accepted Castro's withdrawal of his postconviction motion. We conclude that this proceeding met the requirements of Durocher. Therefore, we find no error in the circuit court's order.
Finally, we consider CCRC's public records claim in this case. Most of this claim is moot, as CCRC would have no authority to request public records on behalf of Castro if it does not represent Castro in this case. See Durocher, 623 So.2d at 485 ("[W]e also hold that CCR has no standing as a `next friend' to proceed on Durocher's behalf."). However, we address that portion of CCRC's claim which concerns public records regarding Castro's competency, an issue which is relevant to the Durocher proceeding. The documents in question appear to relate to mental health records that existed in 1992 or earlier. The doctors that examined Castro for the purposes of the competency hearing at issue in the present case conducted their evaluations after 1992. Thus, even if such records exist, they seem to have little relevance to the current proceeding. Therefore, we find no merit to this claim.
Accordingly, we affirm the circuit court's order discharging CCRC and granting Castro's withdrawal of his postconviction motion.
It is so ordered.
HARDING, C.J., and SHAW, WELLS, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
NOTES
[1] Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).